**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellant,*

v.

GARY EVANS JACKSON,
        *Defendant-Appellee.*

No. 05-30058

D.C. No.
CR-03-00498-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued December 8, 2005
Submitted February 9, 2007
Seattle, Washington

Filed March 29, 2007

Before: Ronald M. Gould and Marsha S. Berzon,
Circuit Judges, and William W Schwarzer,* District Judge.

Opinion by Judge Berzon

*The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

## COUNSEL

John J. Lulejian, Assistant United States Attorney, and Susan B. Dohrmann, Assistant United States Attorney, Seattle, Washington, for the plaintiff-appellant.

Brian Tsuchida, Assistant Federal Public Defender, Seattle, Washington, for the defendant-appellee.

## OPINION

BERZON, Circuit Judge:

Gary Jackson was indicted for violating 18 U.S.C. § 2423(c),[1] which punishes any United States citizen "who travels in foreign commerce, and engages in any illicit sexual conduct with another person." The district court held that application of this statute to Jackson's conduct might well violate the Ex Post Facto Clause of the Constitution, and interpreted the statute narrowly to avoid any constitutional infirmity. We concentrate on the statutory interpretation question and approach it somewhat differently: Using any reasonable definition of the word "travel," we conclude, Jackson's actions fell outside the conduct that Congress proscribed. We therefore affirm the district court's decision to dismiss the indictment.

## I.

## Factual Background

The factual circumstances of this case are undisputed and quite disturbing.

The defendant, Gary Jackson, is a United States citizen and retired marine carpenter. In November 2001, Jackson and his longtime domestic partner, James Kleven, left the United States to relocate permanently to Cambodia. They sold their home and shipped or sold their remaining property. The couple sent money to a friend in Cambodia, who purchased a

---

[1]Unless otherwise noted, all subsequent statutory references are to the 2003 Supplement of the 2000 edition of Title 18 of the United States Code.

home for them.[2] Before their departure, Jackson and Kleven opened a joint bank account in the United States for the purpose of maintaining a depository for Jackson's monthly pension check. Funds from this account were then wired to a joint account Jackson and Kleven opened in Phnom Penh, Cambodia.

After their departure from the United States, Jackson and Kleven traveled in Thailand for two months, eventually settling in their new home in Cambodia in January 2002. Both Jackson and Kleven obtained jobs in Cambodia. According to a declaration filed by Kleven, both men intended to apply for Cambodian citizenship after satisfying that country's five-year residency requirement. Although Jackson continued to use his United States passport to visit other Southeast Asian countries, he never returned to the United States before his arrest on the charges that are the subject of this appeal.

Jackson admits that he met a young Cambodian boy selling newspapers at a café in Phnom Penh on June 27, 2003 and "asked [the boy] if he would sleep with him." Jackson then asked the boy to locate two other young boys to join them at a guesthouse well-known for catering to sexual rendezvouses. The three boys were between the ages of ten and fifteen. Jackson performed oral sex on each of the three boys one at a time, while the others took photographs. After the encounter Jackson gave the boys $21 to split.

Cambodian authorities learned about the incident through an international children's rights group and arrested Jackson on charges of debauchery. While the Cambodian charge was pending, the United States revoked Jackson's passport and agreed to take jurisdiction over the crime. Jackson was thereupon expelled from Cambodia, flown to the United States, and indicted by a grand jury on three counts of violating 18

---

[2]Cambodian law restricts property ownership to Cambodian citizens.

U.S.C. § 2423(c), a statute enacted on April 30, 2003 — well after Jackson left the United States for the last time.

Following his indictment Jackson entered into a plea agreement, admitting that he had committed the acts alleged but reserving the right to challenge the indictment on constitutional, jurisdictional, and statutory grounds. Jackson then filed a motion in the district court seeking to dismiss the indictment on eight different grounds, including violation of the Ex Post Facto Clause and charging conduct not within the scope of the statute. Granting the motion, the district court dismissed the indictment on the ground "that Congress intended only to prohibit both travel and conduct occurring after the statute's effective date." The district court reasoned that the plain language of the statute evidenced Congress's intent to meld the statutory terms "travels in foreign commerce" and "engages in illicit sexual conduct" into one substantive element. Because Jackson's travel in foreign commerce was complete in 2001, the district court held, the statute did not apply to Jackson's conduct. Although the district court also suggested that applying the statute to Jackson would violate the Ex Post Facto Clause, the court rested its holding on its statutory interpretation.

The government timely appealed the order of the district court. We review de novo a district court's decision to dismiss an indictment. *See United States v. Marks*, 379 F.3d 1114, 1116 (9th Cir. 2004), *cert. denied*, 543 U.S. 1170 (2005).

## II.

### Statutory Background

**[1]** International child-sex tourism is a growing problem. Seeking to aid foreign countries that lack effective domestic legal means to prosecute American sex tourists and to deflect foreign criticism that United States citizens are fueling the international sex tourism industry, Congress has sought in

recent years to strengthen this country's laws prohibiting illicit sexual activity by Americans traveling abroad. *See* H.R. REP. 107-525, at 2-3 (2002). A statute enacted in 1994 prohibited international travel by American citizens "for the purpose of engaging" in sex with minors. *See* 18 U.S.C. § 2423(b). Congress went a step further in 2003, adding the offense here at issue. That enactment provides that "[a]ny United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both." Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, § 105, 117 Stat. 650, 653-54 (codified at 18 U.S.C. § 2423(c)). The PROTECT Act defines "illicit sexual conduct" as "(1) a sexual act . . . with a person under 18 years of age that would be in violation of [federal law] if the sexual act occurred in the special maritime and territorial jurisdiction of the United States; or (2) any commercial sex act . . . with a person under 18 years of age."[3] *Id.* (codified at 18 U.S.C. § 2423(f)). The indictment against Jackson alleged violation of § 2423(c).

**[2]** In a recent decision, *United States v. Clark*, 435 F.3d 1100 (9th Cir. 2006), we extensively reviewed § 2423(c) and rejected several constitutional, statutory, and common law challenges to Congress's power to apply it to the defendant in that case. Clark, however, both travelled and committed the illicit sex act charged after the enactment of the statute. *Id.* at 1109 n.13. Neither this circuit nor any other has addressed the application of the statute to individuals whose travel occurred before the PROTECT Act's enactment.

---

[3]Jackson's admitted conduct — giving money to teenage boys for performing oral sex on them — clearly brings his sex acts within the definition of "illicit sexual conduct." *See United States v. Clark*, 435 F.3d 1100, 1114-17 (9th Cir. 2006) (examining the statute's nexus with commercial activity).

Jackson argues that the Ex Post Facto Clause of the Constitution does not permit his conviction when an integral part of the proscribed conduct — the travel in foreign commerce — occurred before the statute's enactment.[4] The government counters that the Ex Post Facto Clause would not be violated if the statute applied to Jackson's conduct, because Jackson *completed* the crime after the 2003 statute was enacted, by engaging in the illicit sex act. *See Johnson v. United States*, 529 U.S. 694, 699 (2000) (noting a successful ex post facto claim requires a defendant to "show both that the law he challenges operates retroactively (that it applies to conduct *completed* before its enactment) and that it raises the penalty from whatever the law provided when he acted" (emphasis added)). Both these arguments depend on examining the conduct that the statute proscribes. We must therefore begin by clarifying the relationship between the offense's two elements — that the defendant (1) travel and (2) engage in illicit sex.

The district court held that the statute "clearly melds 'travel and engages' into one substantive element." Such a view, however, is at least in tension with, and probably inconsistent with, *Clark*'s holding that the statute "does not require that the [illicit sex act] occur *while* traveling in foreign commerce."[5] 435 F.3d at 1107. Moreover, *Clark* quite explicitly treats the travel and illicit sex components of the statute as distinct elements of the crime. *Id*. at 1114. In light of *Clark*, an individual can violate § 2423(c) even if he stops traveling before he engages in illicit sex.[6]

---

[4]The Ex Post Facto Clause provides that "No Bill of Attainder or ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3.

[5]The district court did not have the benefit of this court's ruling in *Clark* when it reviewed the statute.

[6]*Clark* leaves unresolved the question of "[w]hether a longer gap between the travel and the . . . sex act" than existed in that case (less than two months) would "raise constitutional or other concerns." 435 F.3d at 1107 n.11. Our resolution of this case also does not depend upon the length of time between the end of travel and the sex act. Instead, our focus is on the circumstance that the two-year gap between Jackson's travel and his illicit sex acts straddled the statute's enactment. We therefore do not consider whether a two-year gap lacking that characteristic would be a sufficiently "longer gap" to "raise constitutional or other concerns."

So determining, however, does not settle the question whether the statute applies to defendants, like Jackson, who engaged in no transit after the statute was enacted. In addressing that issue, Jackson frames the question primarily as one of Congress's constitutional power to punish him based in part on conduct — the travel to Cambodia — in which he engaged before the enactment of the statute. But that constitutional question would arise only if Congress in fact meant to reach such conduct. If the statute does not apply unless both the travel to Cambodia and the illicit sex act occurred after the 2003 statute was passed, we have no reason to reach the ex post facto question. We therefore turn to the question whether § 2423(c) applies in part retrospectively — that is, when the travel occurred before the statute was enacted.

## III.

### Temporal Reach of the Statute

**[3]** When, as here, the retrospective impact of a law is at issue, the initial question is "whether Congress has expressly prescribed the statute's proper reach." *Fernandez-Vargas v. Gonzales*, 126 S. Ct. 2422, 2428 (2006) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)) (internal quotation marks omitted). If it has not, "we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying 'our normal rules of construction.' " *Id.* (quoting *Lindh v. Murphy*, 521 U.S. 320, 326 (1997)).

Although *Landgraf* and *Fernandez-Vargas* involved the possible retrospective application of civil statutes, the same approach to statutory interpretation applies initially to determining the temporal reach of a criminal statute. That is, while "[t]he *Ex Post Facto* Clause raises to the constitutional level one of the most basic presumptions of our law: legislation, especially of the criminal sort, is not to be applied retroactively," there is an antecedent issue, "[q]uite independent of the question whether the *Ex Post Facto* Clause bars retrospective

application" of the statute, namely "whether Congress intended such application." *Johnson*, 529 U.S. at 701 (citing *Landgraf*, 511 U.S. at 265).

Jackson challenges the partially retrospective application of § 2423(c) to him. We therefore follow the Supreme Court's instructions about the order of our inquiry, and consider first whether Congress has specified the temporal reach of the statute. Doing so, we conclude, using traditional tools of statutory construction, that § 2423(c) applies only if *both* the travel and the illicit sex act took place after the enactment of the PROTECT Act.

**[4]** Our conclusion follows largely from the plain language of the statute. Critical to our statutory interpretation is that § 2423(c) specifies, as one of the crime's two elements, that it covers "[a]ny United States citizen . . . who *travels* in foreign commerce." 18 U.S.C. § 2423(c) (emphasis added). The use of the present tense suggests that statutory element does not apply to travel that occurred before the statute's enactment.

**[5]** As a general matter, "Congress' use of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992).**⁷** Under normal English language conventions, the use of the present tense in § 2423(c) indicates that Congress desired only to cover individuals traveling after the enactment of the statute; one would not refer in the present tense to something that had already happened. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,

---

**⁷**In *Wilson*, the Supreme Court interpreted a federal statute that credits certain time spent in detention before the start of a defendant's sentence. That statute referred to "a sentence that '*was imposed*' " and "the time that the defendant '*has spent*' in official detention." *Wilson*, 503 U.S. at 333 (quoting 18 U.S.C. § 3585(b) (1988)). The Court therefore held that "[b]y using these verbs in the past and present perfect tenses, Congress has indicated that computation of the credit must occur after the defendant begins his sentence." *Id.*

484 U.S. 49, 59 (1987) ("[T]he undeviating use of the present tense strongly suggests [that] the harm sought to be addressed . . . lies in the present or the future, not in the past."); *United States v. Leon H.*, 365 F.3d 750, 752-53 (9th Cir. 2004) (finding that Congress's use of the present tense in a juvenile sentencing statute indicated that the juvenile's age at the time of sentencing was relevant, rather than his age at the time of the crime); *Bonnichsen v. United States*, 367 F.3d 864, 875 & n.15 (9th Cir. 2004) ("In the context of [the statute at question], we conclude that Congress's use of the present tense is significant. The present tense 'in general represents present time.' Congress, by using the phrase 'is indigenous' in the present tense, referred to presently existing tribes, peoples, or cultures." (footnote and citation omitted) (citing RAYMOND W. PENCE & DONALD W. EMERY, A GRAMMAR OF PRESENT DAY ENGLISH 262 (2d ed. 1963))). So the present tense verb "travels," most sensibly read, does not refer to travel that occurred in the past — that is, before the enactment of the statute.

[6] Further, we need not rely only on our linguistic conventions to understand Congress's intentions in using the present tense. Congress has specified generically how we are to apply statutes that use the present tense: The Dictionary Act provides that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . words used in the present tense include the future as well as the present." 1 U.S.C. § 1 (2000).[8] Congress did *not* say that its usage of the present tense applies to past actions, an omission that, given the precision of the Dictionary Act in this regard, could not have been an oversight. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 275 (1947) (finding significance in the Dictionary Act's failure to include government entities in its definition of "persons"); *United States v. Brownfield*, 130 F. Supp. 2d 1177, 1181-82 (C.D. Cal. 2001) (construing a criminal statute's requirement that a mailing be

---

[8]This language of the dictionary act was operative at the time Congress enacted § 2423(c) and remains unaltered.

made to a "person" not to include a mailing to the U.S. government, because the Dictionary Act does not list government entities as a "person"). The Dictionary Act "provides general rules of statutory construction" applicable to the United States Code, *United States v. Middleton*, 231 F.3d 1207, 1210 (9th Cir. 2000), and is fully applicable to construing criminal statutes, *see United States v. A&P Trucking Co.*, 358 U.S. 121, 123 & n.2 (1958). Moreover, the Act's exception for instances when "the context indicates otherwise" applies only when its use would produce genuine discord and is necessary to "excus[e] the court from forcing a square peg into a round hole." *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 200 (1993). We therefore do not have license, absent some strong contextual indication so indicating, to read § 2423(c) as applying to travel that occurred in the past, before the date of enactment.[9]

**[7]** Any doubt that Congress used the present tense with respect to the travel element in § 2423(c) to refer to present and future but not past travel is dissipated by the use of the present tense in referring to the second element of the crime delineated by § 2423(c). That element applies if the offender "*engages* in any illicit sexual conduct." 18 U.S.C. § 2423(c) (emphasis added). With respect to this second element, the

---

[9]We have in one context, without noting the Dictionary Act definition but consistent with its directive to take context into account, read present tense prohibitory language as covering past actions: When a new statute prescribes the consequences for actions that were prohibited at the time they occurred. *See Coal. for Clean Air v. U.S. EPA*, 971 F.2d 219, 223-25 (9th Cir. 1992) (holding that a statute requiring EPA to promulgate regulations "within 2 years after [it] . . . disapproves" of certain state submissions, did not refer just to disapprovals that occurred after the statute's enactment, when preexisting law required those submissions and provided for EPA approval or disapproval (quoting 42 U.S.C. § 7410(c)(1) (Supp. II 1990))). Because Jackson's conduct was *not* prohibited under prior laws, these cases do not inform our understanding of Congress's intent by using the present tense in § 2423(c). We note as well that *Coalition for Clean Air* was decided before the Supreme Court in *Landgraf* set out its methodology for determining the retrospective impact of a statute.

reference *must* be — as the government agrees[10] — to the period after the enactment of the statute. Otherwise, serious ex post facto issues would arise regarding the validity of the statute, because the Ex Post Facto Clause forbids punishing individuals for acts that were legal at the time they were *completed. See Johnson*, 529 U.S. at 699. Likely aware of this limitation, Congress undoubtedly only intended to criminalize illicit sex acts committed after the enactment of the statute. *See* WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 2.4(a), at 155 (2d ed. 2003) ("The clearest sort of an ex post facto law is one which creates a new crime and applies it retroactively to conduct not criminal at the time committed. This is so obviously true that legislation seldom if ever has attempted to accomplish this result.").

**[8]** Given that the present tense phrase "*engages* in any illicit sexual conduct" must apply only to acts after April 30, 2003, we cannot comfortably read the present tense phrase "*travels* in foreign commerce" in the same statutory subsection as applying retrospectively. 18 U.S.C. § 2423(c) (emphases added). Rather, because Congress used the *same* tense in both elements, we give both the same temporal reach, absent some reason to do otherwise. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir. 2001) (en banc) (holding for a statutory prohibition and exception that are both cast in the present tense that "the exception refers back to the same point in time as the [prohibition] clause"); *Redland Soccer Club, Inc. v. Dep't of the Army*, 801 F. Supp. 1432, 1436 (M.D. Pa. 1992) ("The applicable sentence of [the statute] is in the present tense . . . . The next sentence within the same paragraph is undisputably in the present tense . . . . Plaintiffs claim that the first sentence is actually phrased in the past tense, thereby allowing imposition of liability for past owners or operators.

---

[10]The government acknowledges in its brief that the illicit sexual conduct "must occur after April 30, 2003, for the statute to be charged."

Common sense and the rules of grammar belie such an assertion.").[11]

Notably, Congress has used the past tense for certain elements of multiple-element crimes when it wants to specify, as it may, that past conduct suffices to meet some of the elements. *See, e.g.*, 18 U.S.C. § 922(g) (2000) ("It shall be unlawful for any person — who *has been convicted* in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to *ship* or *transport* in interstate or foreign commerce, or *possess* in or affecting commerce, any firearm or ammunition; or to *receive* any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." (emphases added)); *id.* § 2252(a) ("Any person who — knowingly *receives*, or *distributes*, any visual depiction [of child pornography] that *has been mailed*, or *has been shipped or transported* in interstate or foreign commerce . . . shall be punished . . . ." (emphases added)). The statute under which Jackson was convicted contains no such contrast in tenses. We should not read in a temporal distinction Congress failed to make.

When, as here, we find the language of the statute to be clear, "we look no further than that language in determining the statute's meaning." *Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 816 (9th Cir. 2004) (quoting *Or. Natural Res. Council, Inc. v. Kantor*, 99 F.3d 334, 339 (9th Cir. 1996)). But even if we examined the legislative history, we would reach the same result. The legislative reports that explain the purpose of the provision, like the statute itself, use the present tense to refer to both elements of the crime. *See* H.R. Rep. No. 108-66, at 51 (2003) (Conf. Rep.), *as reprinted in* 2003 U.S.C.C.A.N. 683, 686 ("This section addresses a number of

---

[11]In citing these out-of-circuit cases, we do not endorse their ultimate interpretations of the statutes they examined; we merely provide support for our position that the conjoined use of present tense verbs informs statutory interpretation.

problems related to persons who *travel* to foreign countries *and engage* in illicit sexual relations with minors." (emphases added)); H.R. REP. NO. 107-525, at 3 ("H.R. 4477 eliminates the intent requirement where the defendant *completes* the travel *and* actually *engages* in the illicit sexual activity with a minor." (emphases added)).

Finally, our plain words reading of § 2423(c) does not create absurd or impractical consequences that must be avoided. *See Avendano-Ramirez*, 365 F.3d at 816 ("[W]e do not limit ourselves to the apparent plain meaning of a statute, if doing so leads to absurd or impracticable consequences." (quoting *Or. Natural Res. Council*, 99 F.3d at 339)). It is certainly reasonable that Congress chose not to spend resources prosecuting long-expatriated individuals, but only sought to deter future sex tourists from traveling by eliminating their ability to avoid conviction by claiming to lack the requisite intent in their decision to travel. *See* H.R. REP. NO. 107-525, at 3 (noting the statute seeks to "close significant loopholes" in previous legislation banning sex tourism).

**[9]** For all these reasons, we conclude that Congress intended to cover only travel that occurred after the statute's enactment. This determination ends the inquiry demanded by *Landgraf* and its progeny and makes it unnecessary for us to decide whether Jackson's prosecution would violate the Ex Post Facto Clause. Instead, as a matter of statutory interpretation, Jackson's indictment must be dismissed unless he was traveling in foreign commerce on or after April 30, 2003. We now move to the question of whether Jackson was still traveling in foreign commerce on April 30, 2003, or whether his travel ceased before then.

## IV.

## The Completion of Jackson's Travels

The parties' positions concerning when an individual ceases to be a "United States citizen[ ] . . . who travels in for-

eign commerce," as required by § 2423(c), differ. According to the government, such "travel" ends only when a citizen who has gone abroad returns to the United States, regardless of the length of the absence or the degree to which the person has permanently resettled in a new country. Clark maintains, in contrast, that the "travel" ends once the individual reaches his or her foreign destination. We reject the government's position concerning the statutory meaning of "travel" and conclude that to decide this case we need not determine whether the defendant's is correct.

The government's position — that "travel" can go on infinitely, even if a citizen permanently resettles abroad — simply does not comport with common usage of the term "travel," standing alone. When statutes use common words without explicitly defining them, we look to dictionaries to understand the statute's meaning. *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). Dictionaries consistently define "travel" to include an active motion component. *See, e.g.*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1331 (11th ed. 2003) (defining "travel" as "to go on or as if on a trip or tour," "to go from place to place," and "to move or undergo transmission from one place to another"); RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 2014 (2d ed. 1987) (defining "travel" as "to go from one place to another," "to move or go from one place or point to another," "to proceed or advance in any way"); BLACK'S LAW DICTIONARY 1538 (8th ed. 2004) (defining "traveler" as "[a] person who passes from place to place, for any reason").

**[10]** These definitions recognize that a person permanently settled in a location is no longer traveling, even if that place was not his place of origin. Accordingly, although somebody taking a vacation to a foreign country is commonly described as "traveling" the whole time he is away, a typical conversation would not describe somebody who has changed his primary residence to a foreign county as "traveling" the entire time he remains outside the country. *See Ludlam v. Ludlam*,

31 Barb. 486, 490 (N.Y. Gen. Term 1860) ("If he made his domicil in [Peru], as he admittedly did, it is unimportant, for the present question, whether that domicil [sic] continued for one year or ten. He was *not a traveler* but a resident, and yet he was not a citizen of Peru, nor did he intend to become so, but continued all the while a citizen of the United States." (emphasis added)), *aff'd*, 26 N.Y. 356 (1863); *see also Illingworth v. State*, 156 S.W.3d 662, 667 (Tex. App. 2005) (holding that a defendant is not covered by a statute allowing those who are "traveling" to possess concealed weapons because he had already arrived at his destination). So, the government's unsupported claim that Jackson's travel was ongoing because his presence in Cambodia depended upon holding a United States passport is not plausible under any common usage of the term "travel."

*Clark* reinforces our conclusion that the meaning of travel in § 2423(c) is not so broad as the government suggests. In upholding Congress's power under the Foreign Commerce Clause to regulate the defendant's conduct in that case, we relied on "[t]he combination of Clark's *travel in foreign commerce* and his conduct of an illicit commercial sex act in Cambodia *shortly thereafter*." *Clark*, 435 F.3d at 1116 (emphases added). Such phrasing indicates that the defendant's travel ended prior to his commission of the illicit sex act even though he remained abroad. Likewise, *Clark*'s holding that § 2423(c) "does not require that the [illicit sex act] occur *while* traveling in foreign commerce," *id.* at 1107, is logical only on the understanding that travel can end for a United States citizen at *some* point while still abroad.

Moreover, this latter holding in *Clark* undermines the government's explanation of why a broad interpretation of "travel" is necessary: The government suggests that its limitless interpretation of the term "travel" is necessary to avoid the absurdity of requiring that the illicit sex act take place while the offender is in transit — on the airplane or boat carrying him to his destination, for example. As *Clark* indicates, the

illicit sex act does not need to take place *during* the course of travel, but can occur thereafter. The government's expansive interpretation of "travel" is thus not necessary to effectuate Congress's intent broadly to cover illicit sex by Americans "while in a foreign country." H.R. Rep. No. 108-66, at 51 (2003) (Conf. Rep.), *as reprinted in* 2003 U.S.C.C.A.N. 683, 686. We therefore reject the government's travel-goes-on-infinitely position.

That determination leaves two alternate meanings of the term "travel": Travel could end when the citizen arrives in a foreign country, or travel could end only once the citizen resettles in or takes up residence in a foreign country. Under the latter understanding of "travel," a person who is temporarily in France or Thailand — on vacation, for example, or on a business trip — but fully intends to return to a permanent residence in the United States is "traveling" as long as he remains in the foreign city, even if he never leaves Paris or Bangkok to tour the foreign country.

The former interpretation has somewhat more support in the common definitions of the term "travel," discussed above, that refer to active motion between places. But the latter interpretation at least contemplates future active motion — returning to one's home country. And it comports with colloquial usage: We might say that someone on vacation in France for three weeks is "traveling" during that time she is out of the United States whether that person stays in one hotel in Paris or goes to a different city each day.

The first interpretation — that travels ends upon arrival — would be further bolstered if one understood Congress's intent in including the "travels in foreign commerce" element of § 2423(c) to refer to its constitutional authority to regulate the channels of foreign commerce. *See United States v. Clark*, 315 F. Supp. 2d 1127, 1133 (W.D. Wash. 2004) ("The parties agree, as does the Court, that [§ 2423(c)] constitutes a congressional attempt to regulate the use of 'channels of com-

merce.' "), *aff'd*, 435 F.3d at 1116 (suggesting that § 2423(c) could be upheld based on Congress's power to regulate the channels of foreign commerce). Our case law indicates that an individual's use of such channels ends when he arrives in a foreign country. *See United States v. Cummings*, 281 F.3d 1046, 1050 (9th Cir. 2002) (acknowledging, but finding constitutionally irrelevant, that a statute prohibiting the retention of children abroad, who have arrived in the country by means of foreign travel from the United States, "target[s] activity after the use of channels of foreign commerce is complete"). Reading § 2423(c) to make such a constitutional reference would dictate that Jackson's travel ended when he arrived in Southeast Asia.

On the other hand, an understanding that travel ends only upon permanent resettlement in a foreign country is supported by courts' regular use of a distinction between individuals who are physically present without intending to stay in a locale and those who are present with an intent to remain. People in the first category are usually considered mere visitors, while people in the second category are considered residents or domicilaries of the new location. This distinction is used both in common law decisions and in decisions interpreting statutes. *See, e.g.*, *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (noting, under the common-law, that "domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there"); *Maharaj v. Gonzales*, 450 F.3d 961, 974 (9th Cir. 2006) (en banc) (deeming an alien's "intent to remain" in a foreign country relevant to whether he meets the immigration law's ban on asylum for those who are "firmly resettled"); *Nelson v. Bd. of Supervisors*, 190 Cal. App. 3d 25, 30 (1987) (interpreting a California residency statute to require "presence in the jurisdiction and intent to remain"). Congress could have meant to incorporate such an "intent to remain" concept into the determination of when an individual is no longer a traveler, but has instead become a migrant to another county.

We need not chose between these two alternate definitions. Under either interpretation, Jackson's travel had ended by April 30, 2003. As of that date, it had been nearly eighteen months since his last airplane flight from the United States, and almost sixteen months since he had begun residing in a Phnom Penh home purchased for him. As of April 30, 2003, Jackson had given up his residence in the United States, begun fulfilling Cambodia's five-year residency requirement, and intended then to apply for Cambodian citizenship. The government does not dispute those facts. Instead, it admits in its brief that Jackson "took up residence in Cambodia."

**[11]** It is thus evident that Jackson had both arrived in Cambodia *and* resettled in that country before § 2423(c) was passed. His travel had ended on either plausible interpretation of the term "travel" as used in § 2423(c). As Congress did not intend to cover those whose travel ended before that date, he could not be charged under § 2423(c).

We note that this analysis is entirely consistent with *Clark*'s holding that a lapse in time between a defendant's travel and his sex act will ordinarily not preclude prosecution under the statute. Under our analysis, there was a significant lapse in time between the end of travel and the sex act on either of the two plausible interpretations of the term "travel" we posit. The reason the statute does not apply is not because of that lapse, however, but because *both* the travel and the sex act were completed — separately — before the enactment of the 2003 act under which Jackson was prosecuted.

## V.

### Conclusion

Gary Jackson admits to committing despicable sexual acts with children — acts that led to Jackson's arrest by the Cambodian police. Yet his abhorrent conduct does not give us license to ignore the elements of the criminal statutes that

Congress has established. As we have explained, the text of § 2423(c) only proscribes the conduct of an individual "who travels in foreign commerce" after the enactment of the statute. Because Jackson's travel had ended by April 30, 2003, he is not covered by the provision. The district court was therefore correct to dismiss the indictment.

**AFFIRMED.**