FILED
United States Court of Appeals
Tenth Circuit

November 5, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff–Appellee.

v.

MICHAEL RAY HUSTED,

      Defendant–Appellant.

No. 08-6010

---

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:07-CR-00105-D-1)**

---

William P. Earley, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for the Defendant–Appellant.

Robert Don Gifford, II, Assistant U.S. Attorney (John C. Richter, United States Attorney, with him on the briefs), Oklahoma City, Oklahoma, for the Plaintiff–Appellee.

---

Before **HENRY**, Chief Judge, **BRISCOE**, and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

Michael Ray Husted challenges his conviction under 18 U.S.C. § 2250, part

of the Sex Offender Registration and Notification Act ("SORNA" or "the Act"),

for failure to register as a sex offender after traveling in interstate commerce. He makes four arguments on appeal: (1) SORNA does not apply to him because his interstate travel was complete before the Act became effective; (2) SORNA does not apply to him because Missouri state law did not require him to register; (3) if SORNA does apply to him, it violates the Ex Post Facto Clause of the Constitution; and (4) SORNA is not within Congress's Commerce Clause authority. We conclude that SORNA cannot apply to a defendant whose interstate travel is complete prior to the effective date of the Act. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse Husted's conviction.

**I**

Husted was convicted of aggravated criminal sexual abuse of a child on March 22, 1993, in Hancock, Illinois. Under Illinois law, Husted was required to register as a sex offender and to annually update his registration with Illinois authorities. In April 2005, he failed to update his registration with the Illinois sex offender registry, so his registration obligation was extended for an additional ten years. In January 2006, Husted informed the Hancock County Sheriff's Department in Illinois that he was moving to Enid, Oklahoma. Husted left Illinois for Oklahoma shortly thereafter.

Husted registered as a sex offender with Oklahoma authorities on February 8, 2006, and updated his registration on March 15, 2006. He did not thereafter update his registration with Oklahoma authorities and, as a result, fell out of

compliance with Oklahoma law. On February 8, 2007, Oklahoma officials mailed a letter to Husted at his Enid address informing him that he was out of compliance with state registration requirements. Because Husted no longer lived at his recorded address, the letter was returned six days later. In response, officials from the Oklahoma Department of Corrections notified the United States Marshals Service that Husted was in violation of Oklahoma law and that his whereabouts were unknown. Officers from the Enid Police Department then visited Husted's last known address to investigate and learned that Husted had moved in April 2006.

On April 6, 2007, a Deputy United States Marshal contacted the police department in Lebanon, Missouri to determine if Husted had moved there. The Lebanon Police Department reported that Husted had been arrested on unrelated charges on March 6, 2007, while living in Lebanon. At no point did Husted inform Oklahoma officials of his move to Missouri, nor did he register with Missouri officials upon his arrival in Lebanon.

It is not clear from the record precisely when Husted moved from Oklahoma to Missouri, but it is undisputed that he did so prior to July 27, 2006, the effective date of SORNA. Moreover, there is no indication from the record that Husted ever left Missouri after July 27, 2006, and the government does not argue to the contrary. As the government conceded at oral argument, on the

record before us, Husted's interstate travel was complete prior to SORNA's effective date.

In April 2007, an Oklahoma grand jury indicted Husted with one count of failure to register as a sex offender, in violation of SORNA, specifically 18 U.S.C. § 2250.[1]  The indictment alleged that Husted had failed to properly "update and register as a sex offender" in Missouri after traveling in interstate commerce from Oklahoma.  Husted moved to dismiss his indictment, raising the same four arguments he has preserved on appeal:  (1) SORNA did not apply to him because his interstate travel was complete prior to the Act's effective date; (2) Missouri law did not require Husted to register as a sex offender, so his failure to register in Missouri could not serve as the basis for a SORNA violation; (3) applying SORNA to Husted violated the Ex Post Facto Clause of the Constitution; and (4) SORNA exceeded the scope of Congress's Commerce Clause authority.  The district court denied Husted's motion to dismiss but, apparently concerned about a potential Ex Post Facto Clause violation, amended the indictment to reflect July 27, 2006—the effective date of SORNA—as the date the offense commenced.

Husted pleaded guilty to the indictment, reserving the right to appeal the denial of his motion to dismiss.  The district court sentenced Husted to 18

---

[1] SORNA was enacted as Title I of the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. No. 109-248, 120 Stat. 587 (2006).

months' imprisonment as well as five years of supervised release. Appeal was then taken.

## II

Before reaching any constitutional issues, we must first decide whether 18 U.S.C. § 2250(a)(2)(B) applies to a defendant whose interstate travel is complete prior to July 27, 2006, the date SORNA became effective. We conclude that it does not.

We review issues of statutory interpretation de novo, accepting the district court's factual determinations unless they are clearly erroneous. United States v. Manning, 526 F.3d 611, 614 (10th Cir. 2008).

## A

We begin our analysis, as we must, with the text of SORNA. E.g., Duncan v. Walker, 533 U.S. 167, 172 (2001); Williams v. Taylor, 529 U.S. 420, 431 (2000); United States v. Gonzales, 520 U.S. 1, 4 (1997). If the words of the Act are unambiguous, our inquiry progresses no further. Gonzales, 520 U.S. at 6 ("Given the straightforward statutory command, there is no reason to resort to legislative history."); Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (citation omitted)); Kelley v. City of Albuquerque, 542 F.3d 802, 813 (10th Cir. 2008). It is a cardinal principle of statutory construction that "[i]f the language is clear and unambiguous, the plain

meaning of the statute controls." Vaughn v. Epworth Villa, 537 F.3d 1147, 1152 (10th Cir. 2008) (quotation omitted). Based on SORNA's plain language, we conclude that § 2250(a)(2)(B) does not apply to an individual whose interstate travel is complete before July 27, 2006.

SORNA provides:

a) In general.—Whoever—

> (1) is required to register under the Sex Offender Registration and Notification Act;
>
> (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250 (emphasis added). Thus, in order to convict a defendant under § 2250 using the first clause of subsection (a)(2)(B), the government must prove that he: (1) is required to register under SORNA;[2] (2) travels in interstate

---

[2] 42 U.S.C. § 16911 (defining "sex offender" and other relevant terms),

(continued...)

commerce;[3] and (3) knowingly fails to register or update registration as required by SORNA.  We need only address the second element in order to resolve this appeal.  Husted argues that SORNA does not apply to him because the term "travels" only covers individuals who travel in interstate commerce after SORNA's effective date.  By contrast, the government contends that the term "travels" encompasses individuals who travel in interstate commerce at any point after they have been convicted of a qualifying sex offense.  We agree with Husted.

As noted, § 2250(a)(2)(B) applies to whomever "travels in interstate . . . commerce" (emphasis added).  Congress's use of the present tense form of the verb "to travel" indicates that SORNA's coverage is limited to those individuals who travel in interstate commerce after the Act's effective date.[4]  See 1 U.S.C. § 1 (directing courts that, unless context indicates otherwise, "words used in the present tense include the future as well as the present"); United States v. Wilson, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in

---

[2](...continued)
§ 16913 (establishing registration requirements).

[3] At oral argument, the government conceded that § 2250(a)(2)(B) is an express jurisdictional element of the offense.

[4] Section 2250 also reaches those persons who were convicted under federal law, the law of the District of Columbia, Indian tribal law, or the law of any United States territory, see § 2250(a)(2)(A), but that portion of the statute is not at issue here.

construing statutes."). The Act uses the present tense ("travels"), which according to ordinary English grammar, does not refer to travel that has already occurred. Had Congress used the past tense ("traveled") or the present perfect tense ("has traveled"), then this might be a different case. Here, however, we find no ambiguity in Congress's use of the word "travels."

Additionally, Congress's use of the present tense throughout § 2250(a)(2)(B) confirms our interpretation of the term "travels." See United States v. Bishop, 412 U.S. 346, 356 (1973) ("[C]ontext is important in the quest for [a] word's meaning."); United States v. Ceballos-Martinez, 387 F.3d 1140, 1144 (10th Cir. 2004) (noting that statutory interpretation "requires [courts] to interpret Congress's choice of words in the context that it chose to use them"). Following the word "travels" in § 2250(a)(2)(B), the remainder of that clause encompasses whoever "enters or leaves, or resides in, Indian country" (emphasis added). Because Congress also used the present tense of the verbs "to enter," "to leave," and "to reside" in the remainder of the clause, we infer that Congress's use of the present tense of "travels" was not inadvertent. Indeed, "the undeviating use of the present tense strongly suggests [that] the harm sought to be addressed . . . lies in the present or the future, not in the past." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., 484 U.S. 49, 59 (1987). Context thus confirms the statute's unambiguous meaning: "travels" encompasses only travel occurring after SORNA's effective date.

United States v. Jackson, 480 F.3d 1014 (9th Cir. 2007), further supports our plain meaning analysis. Jackson interpreted 18 U.S.C. § 2423(c), which punishes any United States citizen "who travels in foreign commerce, and engages in any illicit sexual conduct with another person" (emphasis added). The court reasoned that § 2423(c) contained two elements: (1) travel and (2) illicit sexual conduct. Jackson, 480 F.3d at 1017-18. Emphasizing the statute's use of the present tense form, "travels," the court held that § 2423(c) applied only to travel in foreign commerce occurring after the statute's enactment. Id. at 1018-19. Just as "travel" after the statute's enactment is an element of § 2423(c), so too is "travel" after SORNA's enactment an element of 18 U.S.C. § 2250. As our sibling circuit held, Congress's use of the present tense indicates that it was targeting prospective travel. A clear majority of district courts also agrees with our analysis of "travels" in § 2250.[5] Accordingly, based on SORNA's plain and unambiguous language, we hold that a person must travel in interstate or foreign commerce after the Act's effective date to be convicted under § 2250(a)(2)(B).[6]

---

[5] United States v. Young, 2008 WL 4367851, at *4 (W.D. Tex. June 3, 2008) (unpublished); United States v. Utesch, 2008 WL 656066, at *7 (E.D. Tenn. Mar. 6, 2008) (unpublished); United States v. Kent, 2007 WL 2746773, at *2 (S.D. Ala. Sept. 20, 2007) (unpublished); United States v. Smith, 481 F. Supp. 2d 846, 851 (E.D. Mich. 2007).

[6] Because we find the text of the statute unambiguous, we need not apply the rule of lenity. See United States v. Lanier, 520 U.S. 259, 266 (1997) (ambiguity in a criminal statute should be resolved to encompass only conduct clearly covered by the statute's text).

**B**

Despite SORNA's plain meaning, the government argues that we should nonetheless interpret the statute to reach defendants who traveled interstate before the Act's effective date because to do otherwise would reach an absurd result. The government attempts to rely on the absurdity doctrine articulated in Green v. Bock Laundry Machine Co., 490 U.S. 504, 509 (1989), United States ex rel. Hill v. American Surety Co. of New York, 200 U.S. 197, 203 (1906), and Church of the Holy Trinity v. United States, 143 U.S. 457, 460 (1892). According to the government, Congress intended SORNA to close what was essentially a loophole in the states' sex offender registries. Because sex offenders were frequently able to evade registration requirements simply by moving from state to state, Congress enacted SORNA to close the gaps in the disparate state registration systems and to create a comprehensive registration scheme. It would be absurd, the government tells us, to conclude that Congress did not intend to sweep within the Act's scope those individuals who traveled in interstate commerce prior to its effective date.

We must bear in mind, however, that the absurdity doctrine applies to unambiguous statutes, such as § 2250(a)(2)(B), in only the most extreme of circumstances. See Barnhart v. Sigmon Coal Co., 534 U.S. 438, 459 (2002); Robbins v. Chronister, 435 F.3d 1238, 1241 (10th Cir. 2006) (en banc); Kelley, 542 F.3d at 814-15. Almost two hundred years ago, Chief Justice Marshall laid

the seeds for the absurdity doctrine and highlighted how rare a case must be for it

to apply:

> [I]f, in any case, the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded, because we believe the framers of that instrument could not intend what they say, it must be one in which the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application.

Sturges v. Crowninshield, 17 U.S. (4 Wheat.) 122, 202-03 (1819). Admittedly,

the Supreme Court no longer requires a "monstrous" result to invoke the absurdity

doctrine. See Bock Laundry, 490 U.S. at 509 (allowing for application of the

absurdity doctrine in some cases where a "literal reading would compel an odd

result"). This court implicitly distinguished Bock Laundry, in which the rule at

issue was ambiguous, from cases where the provision interpreted is unambiguous.

United States v. Newsome, 898 F.2d 119, 121 n.3 (10th Cir. 1990). In Newsome,

we held that we will ignore the plain meaning of an unambiguous statute only

when that meaning "leads to absurd results 'so gross as to shock the general moral

or common sense.'" Id. (quoting Crooks v. Harrelson, 282 U.S. 55, 60 (1930)).

Here, as we have shown, the relevant portion of SORNA is unambiguous, and we

cannot say that Congress's choice to regulate only those sex offenders who travel

interstate after SORNA's enactment shocks the general moral or common sense.

Indeed, prospective legislation is typical of the legislative task, and Congress may

well have wished to avoid the very ex post facto concern Husted raises before this

court.  See, e.g., United States v. Security Industrial Bank, 459 U.S. 70, 79 (1982) ("The principle that statutes operate only prospectively . . . is familiar to every law student.").  Consequently, we decline to apply the absurdity doctrine to contravene SORNA's plain meaning.

The government also wishes that we read the broad purposes in the preamble of the Adam Walsh Act to contradict the plain meaning of § 2250(a)(2)(B).  When a statute is unambiguous, however, we must apply its plain meaning except in the rarest of cases; after all, there can be no greater statement of legislative intent than an unambiguous statute itself.  Holland v. Dist. Court, 831 F.2d 940, 943 (10th Cir. 1987) ("What a legislature says in the text of a statute is considered the best evidence of legislative intent or will." (quotation omitted)).  Congress no doubt intended to protect the public from sex offenders, see 42 U.S.C. § 16901 (Adam Walsh Act Declaration of Purpose), but that broad purpose cannot create ambiguity in a separate, specific portion of the statute where ambiguity does not otherwise exist.  Such a reading would contravene the axiom that a specific provision controls over a general one. Gozlon-Peretz v. United States, 498 U.S. 395, 407 (1991); Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987); HCSC-Laundry v. United States, 450 U.S. 1, 6 (1981); United States v. Wagner, 994 F.2d 1467, 1474 (10th Cir. 1993).  To do as the government requests would flood our jurisprudence with claimed ambiguity.  Thus, we find no justification, including a broadly stated

congressional purpose, to reach an outcome different than that dictated by the plain language of § 2250(a)(2)(B).

C

Supreme Court case law, as well as ours, clarifies that "[a] statute may not be applied retroactively . . . absent a clear indication from Congress that it intended such a result." INS v. St. Cyr, 533 U.S. 289, 316 (2001); accord Fernandez-Vargas v. Gonzales, 548 U.S. 30, 37 (2006) ("[A] statute shall not be given retroactive effect unless such construction is required by explicit language or by necessary implication." (quotation omitted)); Sec. Indus. Bank, 459 U.S. at 79-80 ("The presumption is very strong that a statute was not meant to apply retrospectively, and it ought never to receive such a construction if it is susceptible of any other." (quotation omitted)); DeVargas v. Mason & Hanger-Silas Mason Co., 911 F.2d 1377, 1387 (10th Cir. 1990) ("The standard of 'clear congressional intent' for the retroactive application of statutes requires articulated and clear statements on retroactivity, not inferences drawn from the general purpose of the legislation."). At argument, the government conceded that interstate travel is an element of the failure to register offense under 18 U.S.C. § 2250. We will not give this element retroactive effect if another meaning can fairly be given. See St. Cyr, 533 U.S. at 315-16 ("[C]ongressional enactments . . . will not be construed to have retroactive effect unless their language requires this result." (quotation omitted)). Here, the language of § 2250(a)(2)(B) not only

fairly supports our conclusion that "travels" applies only to interstate travel occurring after SORNA's effective date, the language plainly requires that conclusion.

It is asserted by the government that Congress has spoken to the retroactivity issue, and that St. Cyr's admonition against retroactivity therefore does not apply. We disagree. We are directed to the Department of Justice's Interim Rule applying SORNA "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3. Contrary to the government's contention, however, this Rule does not speak to retroactivity of interstate travel under subsection (a)(2)(B). Rather, it speaks solely to the retroactivity of subsection (a)(1), which refers to the remainder of SORNA in defining who must register. This Rule, therefore, does not demonstrate congressional intent to capture within the Act's scope defendants whose interstate travel is complete prior to July 27, 2006.[7]

In the same vein, the government urges us to rely on floor statements by Senator Orin Hatch and Representative F. James Sensenbrenner as a basis for interpreting "travels" to encompass pre-SORNA interstate travel. See 152 Cong. Rec. S8012, 8013 (daily ed. July 20, 2006) (statement of Sen. Hatch); 152 Cong.

---

[7] We need not resolve the government's perplexing argument that an interim rule promulgated by the Department of Justice could somehow constitute a clear statement of intent by Congress to apply SORNA retroactively.

Rec. H5705, 5722 (daily ed. July 25, 2006) (statement of Rep. Sensenbrenner). But, it is a longstanding principle that absent ambiguity we cannot rely on legislative history to interpret a statute. See, e.g., BedRoc Ltd. v. United States, 541 U.S. 176, 186-87 & n.8 (2004); United States v. Fisher, 6 U.S. (2 Cranch) 358, 386 (1805); United States v. Gonzales, 456 F.3d 1178, 1182 (10th Cir. 2006). Moreover, to the extent that we rely on the canon against retroactivity as additional support for our plain text holding, the legislative history here is not sufficiently clear to preclude the effect of that longstanding canon. As we have previously stated with regard to Senate reports, "an ambiguous statement in [a] senate report on the need for action does not amount to the clear intent required to invoke retroactivity." See DeVargas, 911 F.2d at 1386. Ambiguous floor statements, like those at issue here, are similarly insufficient to demonstrate a clear congressional intent to apply § 2250(a)(2)(B) retroactively.

Coupled with the floor statements of Senator Hatch and Representative Sensenbrenner, the government at oral argument urged this court to examine a textual change made to SORNA between its introduction in the House of Representatives and its final passage. As initially proposed in the House of Representatives, the relevant subsection read, "whoever . . . thereafter travels in interstate or foreign commerce." Children's Safety and Violent Crime Reduction Act of 2005, H.R. 4472, 109th Cong. § 2250(a)(2) (1st Sess. 2005) (as introduced in House on Dec. 8, 2005) (emphasis added). According to the government,

- 15 -

deletion of the word "thereafter" prior to SORNA's passage changed the meaning of the provision to encompass travel completed before July 27, 2006.

Interpretation of the removal of "thereafter," however, is far from obvious. It can just as plausibly be said that "thereafter" was deleted to avoid redundancy. Use of "travels" in the present tense was alone sufficient to convey Congress's limitation of the scope of § 2250(a)(2)(B) to travel occurring after SORNA became effective. Because there is an equally plausible interpretation of Congress's decision to delete the word "thereafter," the government's attempted inference from legislative history is not the "clear" or "necessary implication" required to contravene the canon against retroactivity.

Because we hold that SORNA does not apply to Husted, whose interstate travel was complete prior to the Act's effective date, we need not reach any of his remaining arguments.

### III

We **REVERSE** Husted's conviction, **VACATE** his sentence, and **REMAND** to the district court with directions to **DISMISS** the indictment in accordance with this opinion.