McCONNELL, Circuit Judge,
dissenting.
The crucial question in this case is the interpretation of 42 U.S.C. § 16913(d), which the majority finds “ambiguous.” I do not, and do not believe that there is an alternative reading of the language that permits us to affirm. § 16913(d) reads:
The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.
The majority holds that the subchapter applied to prior offenders even before the Attorney General exercised his authority to specify whether it would do so, and thus presumably even if the Attorney General had never done so. This interpretation effectively writes the first clause of § 16913(d) out of the statute. That is not a tenable interpretation.
The section has two clauses. The first clause says, unambiguously, that the Attorney General has the authority to specify the requirements of the subchapter — all of SORNA[1] — to those who were convicted of a sex offense before the date of enactment (July 27, 2006), or its implementation in a particular jurisdiction. This clause provides that the Attorney General “shall” have the authority to “specify the applicability” of SORNA to past offenders. Until the Attorney General does so, the Act applies only prospectively, and does not apply to past offenders like Mr. Hinckley. As the district court explained in United States v. Gill, 520 F.Supp.2d 1341, 1347 (D.Utah 2007):
[Subsection (d) ] unambiguously delegates authority to the Attorney General to determine SORNA’s retroactive application — that is, in the words of the statute, the “applicability” of the registration requirement. Without such a determination from the Attorney General, the statute had no applicability to previously convicted sex offenders like [the defendant]
The second clause gives the Attorney General quite a different authority: to prescribe rules for the registration both of those whose offenses predate SORNA and also for “other categories of sex offenders” who, for whatever reason, are unable to comply with the initial registration requirements of SORNA. This clause also does not present any ambiguity. Whereas the Attorney General has the authority to *950 “specify the applicability” of SORNA only as regards sex offenders who were convicted of their offense prior to SORNA’s enactment, he can prescribe rules for the registration both of any pre-SORNA offenders and of other categories of sex offender (i.e., groups of offenders who committed their offense after enactment of SORNA) who meet the specified criterion, namely the inability to meet the initial registration requirements of subsection (b). Most of these, presumably, are offenders whose states did not have a SOR-NA-compliant registration system in place at the time of their offense. There is no grammatical reason to limit the category of pre-SORNA offenders to those who are unable to comply with subsection (b), for purposes of either clause. Because there is no ambiguity, there is no need to look to the subtitle, the statutory purpose or context, or any other secondary interpretive aids.[2]
There is nothing irrational or counterproductive about this straightforward interpretation. SORNA’s registration requirement applies to all sex offenders, whether their offense was committed before or after the effective date. But the criminal penalties of the Act are triggered by the offender’s travel in interstate commerce. 18 U.S.C. § 2250(a)(1)(B). This Court has held, and the majority does not dispute, that offenders who completed their travel in interstate commerce prior to July 27, 2006 face no criminal penalties for failure to register. United States v. Husted, 545 F.3d 1240 (10th Cir.2008). We rejected the government’s argument that it was absurd to interpret the statute in this limited way. Under the plain meaning of the statute, offenders like Mr. Hinckley, who completed their interstate travel during the seven months it took the Attorney General to issue regulations under § 16913(d), are in the same legal position as Mr. Husted. Not until they travel interstate after the effective date of the Act (which in their case is the date of the Attorney General’s regulation) will they face criminal penalties for failure to register. The majority’s argument that this limitation would exempt “virtually the entire existing sex offender population” and “would directly contradict the Act’s stated purpose of establishing ‘a comprehensive national system for the registration of [sex offenders and offenders against children],’ ” Maj. Op. 932 (internal citations omitted), is no more true here than it was in Husted. The Act applies to past offenders; the only practical effect of adopting the plain language interpretation is that offenders who traveled from one state to another after July 27, 2006 but before February 28, 2007, and have not traveled interstate since then, are treated the same way as those, like Mr. Husted, whose interstate travel was completed before July 27, 2006. If this seven months’ gap mat *951 ters as much as the majority asserts, the Attorney General should have issued his one-sentence regulation more quickly.
The majority follows the Eighth Circuit in United States v. May, 535 F.3d 912, 918 (8th Cir.2008), which in turn adopted the reasoning of United States v. Beasley, No. 1:07-CR-115-TCB, 2007 WL 3489999 (N.D.Ga. Oct.10, 2007). The Beasley court began its analysis by purporting to find an ambiguity in the second clause of subsection (d). According to the Beasley court, it is linguistically possible to read the second clause of subsection (b) as providing that past offenders “are included within (and not a separate group from) the broader category of ‘sex offenders who are unable to comply with subsection (b).’ ” Id. at *6. It then read this supposed ambiguity back into the first clause of subsection (b) and concluded that the Attorney General’s authority to determine retroactivity applies only to past offenders who were unable to comply with the initial registration requirements at the time of their offense:
An additional possible meaning of subsection (d) is that past offenders (“offenders convicted before the enactment of this Act”) are included within (and not a separate group from) the broader category of “sex offenders who are unable to comply with subsection (b),” and it is only as to those “sex offenders who are unable to comply with subsection (b)” that the Attorney General was given authority under subsection (d) to issue clarifying regulations. In light of this ambiguity, the title of subsection (d) should be considered. Once the title is considered, the ambiguity in the one sentence text that follows the descriptive title is resolved, and it becomes clear that subsection (d) only applies to initial registration.
Beasley, 2007 WL 3489999, at *6 (footnotes and citations omitted).
The first problem with this analysis is that the second clause cannot plausibly be given this alternative reading. The second clause of subsection (b) states that the Attorney General’s authority to prescribe rules for registration is applicable to “such offenders” (meaning past offenders) and “other categories of sex offenders” who are unable to comply with initial registration requirements. “Other categories of sex offenders” plainly means types of sex offenders not encompassed within the former category, that is, those who are not past offenders. To read the statute as subsuming the set of past offenders into the set denominated “other categories of sex offenders” ignores the key term “other,” which indicates that the two categories are distinct. It would be like interpreting a statute that applies to “humans and to other categories of primate who walk on two legs” as excluding paraplegic humans.
The second, and even more glaring, problem is that this interpretation produces a reading of the first part of subsection (b) flatly inconsistent with its language. In effect, the Beasley court has rewritten the first clause of subsection (d) to add two phrases to the statute which Congress did not place there. Those added phrases appear in brackets: “The Attorney General shall have the authority to specify the applicability of the requirements of [subsection (b) of] this sub-chapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction [only if they are unable to comply with subsection (b) of this section].” In my opinion, neither of the bracketed additions is warranted or permitted by the statutory language. The first clause unmistakably gives the Attorney General authority to “specify the applicability of the requirements of this subchapter ” to past offenders. The “sub-chapter” is the entirety of SORNA — not *952 just the initial registration requirements. Similarly, because Congress explicitly required the Attorney General to determine the applicability of the Act to “sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction,” courts may not limit that authority to the subset of prior offenders who were unable to comply with the initial registration requirements. Statutory interpretation involves discerning the meaning of the words used by Congress, not adding new words or limiting those Congress chose to use.
I conclude that there is no ambiguity in subsection (d), and the alternative reading proposed by the Beasley court and adopted by the majority is untenable. It follows that, because the Attorney General had not promulgated any rules about the retroactivity of SORNA prior to Mr. Hinckley’s conviction, Mr. Hinckley did not violate its registration requirements. I therefore respectfully dissent.

. SORNA is found in Title 42 of the United States Code. Chapter 151 of Title 42 concerns "Child Protection and Safety.” Subchapter I of Title 42 is "Sex Offender Registration and Notification,” i.e., SORNA.

. Judge Gorsuch, in concurrence, relies heavily on an analogy involving dogs and coyotes. Gorsuch concurrence, at 941. The force of his analogy, however, arises entirely from the inherent unlikelihood that veterinarians would advertise to perform surgery on wild coyotes. There is no such inherent implausibility in Congress investing the Attorney General with discretion to determine whether and how this statute should apply to prior offenders. A precise analogy to the statute would be a veterinarian’s advertisement promising to "perform surgery on canines under 100 pounds, and to provide necessary medication for any such canines and for other categories of canines who meet [certain specified qualifications].” There is no ambiguity. All canines under 100 pounds may receive both surgery and necessary medication; other categories of canine may receive medication only if they meet the specified qualifications. There is no linguistic justification to limit surgeries on canines under 100 pounds to those who also meet the qualifications applicable to the "other categories” of canines.