PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-6567

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

RICHARD ARTHUR SCHMIDT,

Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore. J. Frederick Motz, Senior District
Judge. (1:04-cr-00052-JFM-1; 1:12-cv-03370-JFM)

Argued: December 6, 2016              Decided: January 4, 2017

Before WILKINSON, AGEE, and HARRIS, Circuit Judges.

Reversed by published opinion. Judge Wilkinson wrote the
opinion, in which Judge Agee and Judge Harris joined.

**ARGUED**: Sujit Raman, OFFICE OF THE UNITED STATES ATTORNEY,
Greenbelt, Maryland, for Appellant. Mary Elizabeth Davis, DAVIS
& DAVIS, Washington, D.C., for Appellee. **ON BRIEF**: Rod J.
Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Baltimore, Maryland, for Appellant.

WILKINSON, Circuit Judge:

Richard Schmidt pleaded guilty to traveling in foreign commerce and engaging in illicit sexual conduct in violation of 18 U.S.C. § 2423(c). Schmidt now argues that, as a matter of law, he did not travel in foreign commerce in connection with his illicit sexual conduct and is thus actually innocent of the offense. The district court agreed. We review the judgment of the district court de novo, and for the reasons that follow, we reverse.

I.

In the words of the district court, Schmidt is a "sexual predator." United States v. Schmidt, Civ. No. JFM-13-3370, 2015 WL 5440732, at *1 (D. Md. Sept. 11, 2015). He has been repeatedly convicted since 1984 for extensive and grotesque sex offenses involving young boys.

In June 2002, Schmidt fled the United States to the Philippines to avoid arrest for allegedly making unauthorized contact with a minor in violation of his parole. He obtained employment there as a school instructor until he was arrested by Philippine authorities for once again sexually molesting young boys. In December 2003, Schmidt fled to Cambodia during a period of pre-trial release, roughly eighteen months after he first arrived in the Philippines. His pattern of sex offenses nonetheless continued until he was arrested by Cambodian

2

authorities that same month. He was soon released on "police watch" only to rape another young boy within two days. As a result, Schmidt was deported to the United States to face numerous criminal charges, including a violation of § 2423(c) in Count 10 of his indictment for illicit sexual conduct in Cambodia. Schmidt pleaded unconditionally guilty to this charge and was sentenced to a prison term of fifteen years and a lifetime of supervised release.[1]

Schmidt now petitions under 28 U.S.C. § 2255 to vacate his conviction, arguing that he is actually innocent of violating § 2423(c) and that his counsel was ineffective for failing to notice this defect at the time he entered his plea. Schmidt does not deny his illicit sexual conduct. Instead, Schmidt contends that his travel in foreign commerce ended during his stay in the Philippines, long before his illicit sexual conduct in Cambodia. He further claims that any subsequent travel, such as his flight to Cambodia, was not independent travel in foreign commerce for purposes of § 2423(c).

We are therefore presented with a straightforward question. When did Schmidt's travel in foreign commerce end after he departed the United States? Because we conclude that Schmidt was still traveling in foreign commerce from the time he departed

---

[1] Schmidt also pleaded guilty to Count 7 of his indictment, which the government has conceded was defective.

3

the United States until the time of his illicit sexual conduct in Cambodia, we conclude that he is not actually innocent of the § 2423(c) offense.

## II.

### A.

Congress enacted § 2423(c) as part of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today ("PROTECT") Act of 2003, Pub. L. No. 108-21, § 105(a), 117 Stat. 650, 654 (2003). At the time of Schmidt's offense, it read:

> Engaging in Illicit Sexual Conduct in Foreign Places.—Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

As the title implies, § 2423(c) was intended to criminalize "Engaging in Illicit Sexual Conduct in Foreign Places." It was aimed in part at the "ugly American," whose sexual exploits and visitation to sexual guesthouses abroad have helped to stimulate the sex trade in young children even to the point of wrenching them at an early age from their own homes.

The statute expanded upon 18 U.S.C. § 2423(b), which had been previously enacted to criminalize "Travel With Intent To Engage in Illicit Sexual Conduct." Congress recognized the difficulty of proving that a defendant traveled "for the purpose

4

of" engaging in illicit sexual conduct, id., and passed § 2423(c) to "close loopholes that facilitated the abuse of children abroad by sex tourists," United States v. Bollinger, 798 F.3d 201, 219 (4th Cir. 2015). As the House Conference Report explained, "Current law [§ 2423(b)] requires the government to prove that the defendant traveled with the intent to engage in the illegal activity. Under this section [§ 2423(c)], the government would only have to prove that the defendant engaged in illicit sexual conduct with a minor while in a foreign country." H.R. CONF. REP. No. 108–66, at 51 (2003), reprinted in 2003 U.S.C.C.A.N. 683, 686.[2]

We construe the statute accordingly.

## B.

Merriam-Webster's Collegiate Dictionary defines "travel" as "to go on or as if on a trip or tour," "to go from place to place," and "to move or undergo transmission from one place to another." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1331 (11th ed. 2003). Neither party contends that prohibited sexual conduct must occur

---

[2] In 2013, Congress amended § 2423(c) to criminalize illicit sexual conduct by any United States citizen who "travels in foreign commerce or resides, either temporarily or permanently, in a foreign country." Pub. L. No. 113-4, § 1211(b), 127 Stat. 54, 142 (2013) (emphasis added). To the extent Congress meant to clarify the original meaning of § 2423(c), the Supreme Court has held that "[s]ubsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." Red Lion Broad. Co. v. FCC, 395 U.S. 367, 380–81 (1969).

en route from one place to another, and such a narrow construction of travel would surely defeat the intent of Congress. See United States v. Clark, 435 F.3d 1100, 1107 (9th Cir. 2006) ("It [§ 2423(c)] does not require that the conduct occur while traveling in foreign commerce."). Rather, travel denotes a broader concept of movement abroad. A person may still be traveling even after a significant amount of time in a given location so long as the visit is sufficiently transient or contemplates some future departure. See United States v. Jackson, 480 F.3d 1014, 1022 (9th Cir. 2007). Travel can thus continue until a party either returns to his or her place of origin or permanently resettles elsewhere. As the Ninth Circuit has observed, "[A]n understanding that travel ends only upon permanent resettlement in a foreign country is supported by courts' regular use of a distinction between individuals who are physically present without intending to stay in a locale and those who are present with an intent to remain. People in the first category are usually considered mere visitors, while people in the second category are considered residents or domiciliaries of the new location." Id. at 1023-24. This construction "comports with colloquial usage." Id. at 1023.

Next, 18 U.S.C. § 10 defines "foreign commerce," in language that largely parallels the Foreign Commerce Clause, to include "commerce with a foreign country." We have previously

6

noted, focusing on the conjunctive "with," that foreign commerce requires some nexus with the United States. See Bollinger, 798 F.3d at 214. This makes sense: The United States cannot go around prosecuting under the statute those with no real connection to this country. See United States v. Pendleton, 658 F.3d 299, 307-08 (3d Cir. 2011) ("Courts have consistently held that the Foreign Commerce Clause requires a jurisdictional nexus 'with' the United States, but there is precious little case law on how to establish the requisite link . . . ." (citations omitted)); United States v. Weingarten, 632 F.3d 60, 70 (2d Cir. 2011) ("[I]t would be anomalous to construe the general definition of 'foreign commerce' in § 10 . . . as including all forms of commerce occurring outside the United States and without nexus whatsoever to this country."). The statutory history of § 10 reinforces this requirement. See Weingarten, 632 F.3d at 67-70.

Travel in foreign commerce therefore encompasses movement abroad that maintains some nexus with the United States. We consider all relevant facts and circumstances to determine whether and to what extent a defendant traveled in foreign commerce.

III.

A.

Schmidt does not contest that he traveled in foreign commerce when he fled the United States to the Philippines. Movement directly to or from the United States is unquestionably an adequate nexus. Instead, Schmidt argues that his travel in foreign commerce ended shortly thereafter. He points out that he obtained a work permit and full-time employment, rented a home, and used a local driver's license in the Philippines. He further argues that the eighteen months he spent there was sufficient to indicate that his travel had ended, or at least to sever any nexus with the United States. As a result, Schmidt contends that he was no longer traveling in foreign commerce when he fled to and engaged in illicit sexual conduct in Cambodia.

We disagree. Schmidt overlooks a number of more significant factors. To begin, his status remained transient from the time he left the United States until the time of his illicit sexual conduct in Cambodia. He stayed in the Philippines on a series of two-month tourist visas and worked using an "alien employment permit" for "non-resident foreign nationals" that he apparently allowed to lapse before renewing. J.A. 223-24. Schmidt also maintained a substantial amount of money in the United States, and never purchased a home or other property abroad.

When Schmidt's unlawful sexual conduct attracted the attention of Philippine authorities, he had no trouble making a quick pivot to Cambodia. Unlike when he fled the United States leaving significant assets behind, Schmidt fled the Philippines leaving no trace beyond the ruin caused by his sexual exploits. He then entered Cambodia on a one-month tourist visa and frequented guesthouses known to attract sex tourists.

We specifically note that Schmidt continually traveled on a United States passport and made no effort to obtain permanent status in another country. At all times, he was a visitor in both the Philippines and Cambodia. The sum of these factors is more than sufficient to establish for purposes of § 2423(c) that Schmidt was still traveling in foreign commerce from the time he left the United States until the time of his illicit sexual conduct in Cambodia. Contrary to his protestations of permanency, Schmidt was something of a rolling stone.[3]

B.

Schmidt contends, however, that travel in foreign commerce necessarily ends sometime during the first stop after departure and that the requisite nexus with the United States is

---

[3] Schmidt's conviction does not present an ex post facto problem because he was still traveling in foreign commerce and engaging in illicit sexual conduct after § 2423(c) was enacted on April 30, 2003. Count 10 charged Schmidt with violating § 2423(c) in December 2003.

9

thereafter severed. But nothing in § 2423(c) indicates that illicit sexual conduct must take place immediately or even shortly after leaving the United States, or that a single course of travel is limited to a single destination. Common sense refutes any such notion. Schmidt's theory would allow a simple layover to defeat the clear design of the statute. A defendant might make a quick stop and then proceed elsewhere cloaked in an artificial immunity from prosecution. See Weingarten, 632 F.3d at 71. Intermediate stops of longer duration are likewise inapposite until a party returns to his or her place of origin or permanently resettles. See id. ("[M]ere stops along the way do not deprive travel of its territorial nexus to the United States.").

Schmidt finally emphasizes that he had no intent to return to the United States and thus his travel in foreign commerce necessarily concluded shortly after he arrived in the Philippines. However, the element of travel and requisite nexus with the United States is an objective inquiry that does not turn solely on self-serving and subjective allegations of intent. While intent to permanently resettle may be one factor in determining when relevant travel in foreign commerce comes to an end, it is not dispositive. In any event, the record here does not support Schmidt's claim.

10

United States v. Jackson is instructive by comparison. The Ninth Circuit there concluded that the defendant's travel in foreign commerce ended after he moved to Cambodia, purchased a home, and commenced the five-year residency requirement for Cambodian citizenship. 480 F.3d at 1015-16, 1024. The defendant and his partner also sold their home and remaining property in the United States, transferring all their assets to Cambodia. Id. Schmidt's sojourns display none of these features.[4]

IV.

The judgment of the district court is accordingly reversed. We remand for reinstatement of the judgment of conviction on Count 10, which charged defendant with the aforementioned § 2423(c) offense.

REVERSED

---

[4] Schmidt's continuous course of travel makes it unnecessary to address the government's contention that § 2423(c) applies to illicit sexual conduct even after travel in foreign commerce has concluded. Similarly, what might qualify as a nexus to the United States, or how attenuated a nexus might be permitted, are questions we need not decide.

11