**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 14-50095 |
|  | D.C. No. 2:07-cr-00168-DSF-1 |
| v. |  |
| MICHAEL JOSEPH PEPE, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted February 8, 2017
Pasadena, California

Filed July 11, 2018

Before: Sidney R. Thomas, Chief Judge, and Andrew J. Kleinfeld and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Nguyen;
Dissent by Chief Judge Thomas

# SUMMARY*

## Criminal Law

The panel vacated a conviction and sentence under the 2005 version of 18 U.S.C. § 2423(c), which applies to a U.S. citizen "who travels in foreign commerce, and engages in any illicit sexual conduct with another person," and remanded, in a case in which the defendant, a U.S. citizen, drugged and raped several children in Cambodia, where he claims to have resided for several years.

The defendant contended that the statutory language didn't encompass his conduct because, as a resident of Cambodia, he had ceased "travel[ing] in foreign commerce." The panel held that in light of a 2013 amendment to the statute adding a new basis for criminal liability, as well as the accompanying legislative history, it is evident that the version of § 2423(c) in effect at the time of the defendant's illicit sexual conduct was inapplicable to U.S. citizens living abroad unless they were traveling—meaning something more than being in transit—when they had illicit sex. The panel wrote that this subsequent Congressional pronouncement is clearly irreconcilable with this court's previous construction of the statute in *United States v. Clark*, 435 F.3d 1100 (9th Cir. 2006) (concluding that § 2423(c) "does not require that the conduct occur *while* traveling in foreign commerce"), and that the panel is therefore not bound by the reasoning in *Clark*.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel observed that the government appears to dispute the defendant's claim that he had resettled in Cambodia. Because the jury was not properly instructed on the travel element, the panel wrote that if the government elects to retry the defendant, it will need to prove that he was still traveling when he committed illicit sexual conduct.

Dissenting, Chief Judge Thomas wrote that *Clark*, whose holding of the statutory reach of the prior statute is completely consistent with the 2013 amendment, remains good law and is binding on this panel. He wrote further that the panel should not be deciding the question, never argued to the district court, of whether the prior statute applied to citizens who temporarily resided abroad and intended to resettle.

---

## COUNSEL

James H. Locklin (argued), Deputy Federal Public Defender; Hilary L. Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Nancy B. Spiegel, Assistant United States Attorney, Criminal Appeals Section; Patricia A. Donahue, Chief, National Security Division; Lawrence S. Middleton, Chief, Criminal Division; Eileen M. Decker, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

**OPINION**

NGUYEN, Circuit Judge:

Michael Pepe, a U.S. citizen, drugged and raped seven children in Cambodia, where he claims to have resided for several years. Pepe was convicted of violating 18 U.S.C. § 2423(c), engaging in illicit sexual conduct in foreign places, and sentenced to prison for 210 years. The version of the statute under which he was convicted applied to a U.S. citizen "who travels in foreign commerce, and engages in any illicit sexual conduct with another person." 18 U.S.C. § 2423(c) (2005). Pepe's illicit sexual conduct occurred between three and nine months after his return to Cambodia following a brief trip to the United States to visit family and attend his daughter's wedding. Pepe contends that the statutory language didn't encompass his conduct because, as a resident of Cambodia, he had ceased "travel[ing] in foreign commerce."

Pepe's contention runs up against our previous conclusion that the statute "does not require that the conduct occur *while* traveling in foreign commerce." *United States v. Clark*, 435 F.3d 1100, 1107 (9th Cir. 2006). Focusing on the word "and," which connected the travel with the conduct, we construed § 2423(c) to include individuals who, like Pepe, at some point traveled in foreign commerce *and thereafter* engaged in any illicit sexual conduct. *See id.*

However, Congress subsequently amended the statute to add a new basis for criminal liability. The statute now applies to a U.S. citizen "who travels in foreign commerce *or resides, either temporarily or permanently, in a foreign country*, and engages in any illicit sexual conduct with another person." 18 U.S.C. § 2423(c) (2018) (emphasis added). From the statutory amendment, as well as the

accompanying legislative history, it is evident that § 2423(c) was previously inapplicable to U.S. citizens living abroad unless they were traveling—meaning something more than being in transit—when they had illicit sex. Because this subsequent Congressional pronouncement is clearly irreconcilable with our prior construction of the statute, we are not bound by our reasoning in *Clark*.

The government appears to contest that Pepe relocated to Cambodia, but this factual dispute was not resolved below because the district court applied *Clark*. However, if Pepe resided in Cambodia and was no longer "traveling," then the prior version of § 2423(c) does not apply to him. We therefore vacate his convictions and sentence and remand for further proceedings.

## I.

Pepe, a 49-year-old U.S. citizen, left the United States for Cambodia in March 2003 on a one-way ticket. He rented a house, obtained a Cambodian driver's license, bought a car, and secured employment teaching management at a university in Phnom Penh. Pepe "married" a Cambodian citizen, Bith Chanry, and the two of them lived together for a while.[1] He also became involved in community activities,

---

[1] The legal status of their relationship is unclear. Prior to their wedding, Pepe and Bith signed a declaration stating that the ceremony was for "satisfying Bith family considerations" and not "to have any legal standing under Cambodian law, American law or international law." After his arrest, Pepe wrote to the U.S. Ambassador to Cambodia, requesting assistance in registering his marriage. Around the same time, he wrote to his family in the United States, acknowledging years of "on again / off again problems" between himself and Bith and stating that they "are still married."

such as the Phnom Penh Veterans of Foreign Wars Post and the local Catholic church.

Pepe occasionally traveled to the United States to visit his family.  His last such trip prior to his arrest was to Los Angeles for a week in August 2005 to attend his daughter's wedding.  Nearly a year after his return to Cambodia, in June 2006, local authorities took him into custody and searched his home based on information from American officials that a girl had reported him sexually abusing her.  He spent seven months in a Cambodian prison and then was handed over to U.S. authorities, who brought him to the United States.

Pepe was indicted on seven counts of engaging in illicit sexual conduct in foreign places between three and nine months following his return to Cambodia from the wedding. He moved to dismiss the indictment and suppress evidence taken from his home and examined in Singapore and the United States.  The district court denied each of these motions.

At trial, the prosecution presented evidence that Pepe met a prostitute, Basang, at Sharkey Bar in Phnom Penh about five years before his arrest.[2]  Pepe paid Basang for sex several times, but she worked for him primarily by procuring girls around 10–12 years old for sex.  Basang gave the girls' families money from Pepe in exchange.  Pepe paid Basang's rent and gave her $300 to help pay for her parents' gravestones.  Basang also translated for him—the girls and their mothers spoke little or no English, and he could not

---

[2] Basang was deposed at the U.S. embassy in Cambodia while serving a 27-year sentence for trafficking and pimping.  Her deposition testimony was played for the jury.

communicate in the languages that they spoke, Khmer and Vietnamese.

The girls, six of whom testified at trial, lived with Pepe at various times for a few days to several weeks. Basang taught the girls to massage and orally copulate Pepe while he and they were naked. After the girls did this, Pepe would give them a dollar bill. In addition, he forcibly raped each of the girls at least once; some, three times or more. Often, when raping a girl for the first time, Pepe or Basang would give the girl a sedative and Pepe would tie her legs to his bed with a rope. If the girl screamed when she awoke, he would slap her, tape her mouth, or cover her head with a pillow.

The jury convicted Pepe on all seven counts. The district court sentenced him to consecutive 30-year sentences for a total of 210 years in prison. In addition, the court ordered him to pay $247,213 in restitution to two Cambodian non-governmental organizations, Hagar and Agape, on the victims' behalf.

## II.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

Whether 18 U.S.C. § 2423(c) applies to U.S. citizens who reside in—as opposed to just travel to—a foreign country is a question of law which we review de novo. *See United States v. Sheldon*, 755 F.3d 1047, 1049 (9th Cir. 2014).

### III.

### A.

Section 2423 originated in the White-Slave Traffic (Mann) Act, ch. 395, § 3, 36 Stat. 825 (1910). For decades, the statute covered only situations in which the minor victim of certain sex crimes was transported across state or federal borders. Whether the perpetrator accompanied the victim in the travel or arranged the transportation from afar was irrelevant. *See United States v. Barrington*, 806 F.2d 529, 534 (5th Cir. 1986) (holding that perpetrator's "own travel, distinct from her causing others to travel," was unnecessary for § 2423 conviction); *cf. United States v. Jones*, 909 F.2d 533, 540 (D.C. Cir. 1990) ("[O]ne need not physically carry or accompany a person interstate in order to 'transport' her . . . .").

To address the situation where the perpetrator traveled but the victim stayed put, Congress added the offense currently codified in § 2423(b) to punish persons who travel in interstate or foreign commerce "for the purpose of engaging in [a prohibited] sexual act." Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 160001(g), 108 Stat. 1796. Proving that foreign travelers intended to engage in sexual misconduct with children at the time they left the United States turned out to be difficult. The 1994 law resulted in only a handful of such convictions nationwide, *see* Karen D. Breckenridge, Comment, *Justice Beyond Borders: A Comparison of Australian and U.S. Child-Sex Tourism Laws*, 13 P. Rim L. & Policy J. 405, 415 (2004), prompting Congress to amend the statute again less than a decade later. *See* Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, § 105, 117 Stat. 650.

The offense at issue here, § 2423(c), was added in the PROTECT Act.  Congress purposefully omitted an intent element in order to facilitate prosecutions.  *See* H.R. Conf. Rep. 108-66, at 51 (2002) (amending § 2423 to address "a number of problems related to persons who travel to foreign countries and engage in illicit sexual relations with minors," including the need "to prove that the defendant traveled with the intent to engage in the illegal activity").

As originally enacted, the statute applied to "[a]ny United States citizen . . . who travels in foreign commerce, and engages in any illicit sexual conduct with another person."[3]  18 U.S.C. § 2423(c) (2003).  That version of the statute was in effect when Pepe engaged in illicit sexual conduct.  It's also the version that was at issue in *Clark*, where we considered its interpretation and constitutionality under similar facts.

## B.

Michael Clark, a U.S. citizen and military veteran, resided primarily in Cambodia for approximately five years before being extradited.  *Clark*, 435 F.3d at 1103.  He took annual trips back to the United States, where he "maintained real estate, bank accounts, investment accounts, a driver's

---

[3] Pepe doesn't dispute that his conduct fell within the definition of "illicit sexual conduct," which means either (1) certain defined sex acts with a minor that, if performed on U.S. soil, would violate specified sexual abuse laws; or (2) "any commercial sex act" with a minor. 18 U.S.C. § 2423(f).  A "commercial sex act" is "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(c)(1).  The crimes comprising the definition's first prong "share the common characteristic that there is no economic component," *i.e.*, that "they are non-commercial sex acts."  *Clark*, 435 F.3d at 1105.  The jury found Pepe's conduct fell within both prongs.

license, and a mailing address." *Id.* After one such trip to visit family, he flew back to Cambodia via third countries. *Id.* Within two months of his return, "Clark came under suspicion when street kids reported to social workers that he was molesting young boys on a regular basis." *Id.* The Cambodian National Police ("CNP") arrested Clark, charged him with debauchery, and ultimately turned him over to U.S. authorities for prosecution here. *Id.* He pled guilty to violating § 2423(c).

On appeal, Clark argued that the statute was an unconstitutional exercise of Congressional power but could "be saved from constitutional scrutiny by interpreting it to require that the illicit sexual conduct take place while the defendant is literally still traveling." *Clark*, 435 F.3d at 1107. We disagreed. Observing that § 2423 has "two key determinations"—whether the defendant "travels in foreign commerce" and "engages in any illicit sexual conduct"—we concluded that the statute "does not require that the conduct occur *while* traveling in foreign commerce." *Clark*, 435 F.3d at 1105, 1107; *see United States v. Jackson*, 480 F.3d 1014, 1017 (9th Cir. 2007) ("In light of *Clark*, an individual can violate § 2423(c) even if he stops traveling before he engages in illicit sex.").

Although we viewed the statute as "unambiguous" in this respect, *Clark*, 435 F.3d at 1107, our focus was on the word "and," which connected the travel with the conduct. We construed the statute to mean: travels in foreign commerce *and thereafter* engages in any illicit sexual conduct. We thus saw "no plausible reading of the statute that would exclude its application to Clark's conduct because of [the] limited gap" of two months "between his most recent transit between the United States and Cambodia and his arrest." *Id.* We speculated that there might be a constitutional problem

with a longer gap but had no reason to consider the issue. *Id.* at 1107 n.11.

Acknowledging a different interpretive possibility in which "and" means "and concurrently," we dismissed it as leading to absurd results. As a practical matter, we thought it "non-sensical" that Congress would have limited § 2423(c)'s scope "to the unlikely scenario where the abuse occurs while the perpetrator is literally en route." *Id.* at 1107. Such a reading, we explained, "would eviscerate § 2423(c) by severely limiting its use to only those people who commit the offense while physically onboard an international flight, cruise, or other mode of transportation." *Id.*

Implicit in this apparent absurdity, however, was *Clark*'s assumption that the meaning of "travels" was limited to "transits." One travels in that sense by "mov[ing] . . . from one place to another." *Travel*, Merriam-Webster, https://www.merriam-webster.com/dictionary/travel (last visited Nov. 8, 2017). But "travel" could also have the broader meaning of "go[ing] on . . . a trip or tour." *Id.* As we pointed out the following year, "a person who is temporarily in France or Thailand—on vacation, for example, or on a business trip—but fully intends to return to a permanent residence in the United States is 'traveling' as long as he remains in the foreign city . . . ." *Jackson*, 480 F.3d at 1023.

Employing this broader understanding of "travels," the statutory language linking travel "and" illicit sexual conduct could mean, consistent with the goal of combatting sex tourism, that the two elements must occur at the same time. So interpreted, § 2423(c) would apply to sex tourists who fly to foreign countries for a finite time, have illicit sex, and then return to the United States. But it would not apply to

Americans who have illicit sex while residing in the foreign country, because they are not traveling.  The sex tourist's stay in the foreign country need not be short or have a set end date, but it must be expected to end.  In other words, the stay must be temporary.  *See United States v. Schmidt*, 845 F.3d 153 (4th Cir. 2017) (construing the U.S. citizen's "travels" to last eighteen months where he didn't resettle in the foreign country during that time), *cert. denied*, No. 17-5254, 2017 WL 3118060 (U.S. Oct. 2, 2017).

We thus see two plausible interpretations of the statute.  In one, "travels" is construed broadly while "and" is construed narrowly to require that the travel and the illicit sexual conduct occur at the same time.  In the other—the one adopted in *Clark* and rejected by the Fourth Circuit in *Schmidt*—it's just the opposite.  Travel under this view "end[s] when the citizen arrives in a foreign country." *Jackson*, 480 F.3d at 1023.  In this construction, as we explained in *Clark*, the connector "and" necessarily creates an open-ended temporal relationship between the travel and the sexual misconduct in order to save the statute from irrelevance.

## C.

Normally, *Clark*'s interpretation of the statute would bind subsequent panels, including ours.  *See, e.g.*, *United States v. Parga-Rosas*, 238 F.3d 1209, 1212 (9th Cir. 2001).  But there's an important exception to this principle.  We have a rule that "where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

The "intervening higher authority" is generally the federal or state court of last resort or an en banc panel of this court.  However, Congressional amendments to a statute can also "constitute 'intervening' authority for the purposes of our rule." *Landreth v. Comm'r*, 859 F.2d 643, 648 (9th Cir. 1988); *see United States v. McNeil*, 362 F.3d 570, 574 (9th Cir. 2004) ("[W]hen Congress amends statutes, our decisions that rely on the older versions of the statutes must be reevaluated in light of the amended statute." (citing *Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1172 (9th Cir. 2003))).  In particular, "the rule is applicable in cases involving statutory interpretation where Congress has retroactively clarified the meaning of the statute at issue." *Landreth*, 859 F.2d at 648.  If our case law interpreting a statute is clearly irreconcilable with the text and history of subsequent legislation, we are not bound by the decisions of prior panels.  *See United States v. Gonzalez-Torres*, 309 F.3d 594, 599 (9th Cir. 2002) (citing *United States v. Washington*, 872 F.2d 874, 880 (9th Cir. 1989)).  We are dealing with such a case here.

In 2013, Congress amended § 2423(c) as part of the Violence Against Women Reauthorization Act, Pub. L. 113-4, § 1211(b) (2013).  The statute now penalizes a U.S. citizen "who travels in foreign commerce *or resides, either temporarily or permanently, in a foreign country*, and engages in any illicit sexual conduct."  18 U.S.C. § 2423(c) (emphasis added).

This change to the statute makes no sense as we interpreted the original version in *Clark*.  "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."  *Pierce County v. Guillen*, 537 U.S. 129, 145 (2003).  Yet the amendment to § 2423(c) would have virtually no effect if the illicit sexual

conduct can occur anytime after the travel. Almost every U.S. expatriate travels in foreign commerce before residing overseas. Under *Clark*'s analysis, "the only U.S. citizens who could fall outside the reach of § 2423(c) if they engage in illicit sexual conduct abroad are those who never set foot in the United States." *Clark*, 435 F.3d at 1120 (Ferguson, J., dissenting).

Indeed, that is exactly the government's position. It argues that the amendment "was intended to close the loophole of the prior version of the statute that did not criminalize the illicit sexual conduct committed by Americans residing abroad who had not traveled in foreign commerce." Even if that were plausible in the abstract, it is incongruent with the amendment's text.

The offense has always contained two elements: travel in foreign commerce, and the commission of illicit sexual conduct. The amendment concerned the first element, which can now be satisfied in two ways. One either "travels in foreign commerce or resides . . . in a foreign country." 18 U.S.C. § 2423(c).

The word "and," which connects the first element with the second, now modifies both "travels" and "resides." With respect to "travels," we interpreted "and" sequentially in *Clark*—one travels, completes the travel by arriving in the foreign country, *and afterwards* engages in illicit sexual conduct. That interpretation of "and" makes no sense with respect to "resides." The statute obviously was not meant to apply to someone who resides, perhaps temporarily, in a foreign country *and afterwards* engages in illicit sexual conduct. Rather, in that context "and" means "and concurrently"—one engages in the illicit sexual conduct *while residing* in the foreign country. By adhering to our construction in *Clark*, "[t]he word '[and]' would have two

different meanings at once . . . . It would be rather like saying 'He filled and kicked the bucket' to mean 'He filled the bucket and died.' Grotesque." *District of Columbia v. Heller*, 554 U.S. 570, 587 (2008).

The government's explanation for the amendment is also flatly contradicted by the legislative history. *See Landreth*, 859 F.2d at 648 (looking to both the text of the statutory changes and Congressional statements of purpose); *cf. Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 380–81 (1969) ("Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction."). The amendment was adopted nearly verbatim from a proposal by the Alliance to End Slavery & Trafficking ("ATEST"), a lobbying organization comprised of various human rights groups. ATEST advocated for the change out of concern that the original law "only allows the U.S. government to pursue criminal charges against U.S. citizens . . . who exploit children while traveling in foreign commerce. Due to the use and intent of the word 'travel,' this has been interpreted to mean a brief stay and not include resettlement or intent to stay." ATEST, *Recommendations for the Reauthorization of the Trafficking Victims Protection Act of 2000*, at 31 (2011), http://www.castla.org/assets/files/ 2013_TVPRA_Summary.doc (last visited Oct. 25, 2017); *see Best Practices and Next Steps: A New Decade in the Fight Against Human Trafficking: Hearing Before the Subcomm. on Afr., Glob. Health, & Human Rights of the H. Comm. on Foreign Affairs*, 112th Cong. 139 (2011) (material submitted by David Abramowitz, Director of Policy and Government Relations, Humanity United) (recommending that Congress "[c]riminalize the exploitation of children by U.S. citizens living overseas").

Congress shared this understanding of the law, citing the amendment to § 2423(c) as an example of the "significant changes" it was making "to fight human trafficking crimes." S. Rep. 112-96, at 8 (2011).  The Senate Report explained that child exploitation laws were being "strengthened to hold criminally liable those U.S. citizens . . . residing outside of the United States who engage in illicit sexual conduct with a minor.  Current law only reaches U.S. citizens . . . who travel abroad in foreign commerce."  *Id.*  If the design of this legislation was to reach only those U.S. citizens living abroad and committing illicit sexual conduct who had never stepped foot on U.S. soil, it could hardly be described as a "significant" change to existing law.

We thus conclude that *Clark*'s construction of § 2423(c) is clearly irreconcilable with the plain text of its subsequent amendment as well as Congress's stated reason for the change.  The statute originally did not target *all* U.S. citizens who traveled overseas and committed sex crimes with minors—only those who resided in the United States. Because this ensnared only sex tourists who committed their sex crimes while traveling in the foreign country, Congress amended the statute to cover even U.S. citizens who chose to relocate, either temporarily or permanently, overseas.

We do not depart from circuit precedent lightly.  When intervening higher authority casts doubt on our prior statutory interpretation, we must attempt to reconcile the two, reserving for an en banc panel the prerogative to overrule imprudent but still tenable decisions.  *See Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1106 (9th Cir. 2016).  If it were possible, consistent with *Clark*, we would read the amendment to § 2423(c) as clarifying rather than enlarging its scope.  But even the government agrees that Congress expanded criminal liability when it

amended the statute. There's no interpretation of the current statutory text that is consistent both internally and with *Clark*.

Departing from precedent might still give us pause if *Clark* had considered and rejected the interpretation we adopt today. However, *Clark*'s analysis focused on the statute's constitutionality. In its brief discussion of the statute's meaning, *Clark* weighed only whether "and" should be construed narrowly or broadly. It didn't consider this question in the context of whether "travels" could be read more expansively. Just as cases are not precedential for propositions not considered, *see United States v. Ramos-Medina*, 706 F.3d 932, 938 (9th Cir. 2013), *Clark* does not foreclose an interpretation of the statute that it didn't consider when subsequent Congressional action renders that interpretation the only one possible.

## D.

Aside from what the 2013 amendment revealed about Congressional intent, there are good reasons to interpret the former statute as we do. We normally resolve "ambiguity concerning the ambit of criminal statutes . . . in favor of lenity." *Jones v. United States*, 529 U.S. 848, 858 (2000) (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)). This canon of construction serves the policy of giving "fair warning . . . to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *United States v. Bass*, 404 U.S. 336, 348 (1971) (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931)). In addition, "because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community,

legislatures and not courts should define criminal activity."
*Id.*

By dispensing with the intent element, § 2423(c) marked
a dramatic departure from existing law in order to facilitate
convictions.[4]   Strict liability is generally imposed for so-
called "public welfare offenses" that "are in the nature of
neglect where the law requires care, or inaction where it
imposes a duty." *Morissette v. United States*, 342 U.S. 246,
255 (1952).    Such offenses rarely involve moral
condemnation by the community; they tend to carry minor
penalties, with conviction resulting in no grave harm to an
offender's reputation.   *Id.* at 256.   Section 2423(c), in
contrast, threatens an offender with up to 30 years in prison
and lifetime registration as a sex offender. *See* 34 U.S.C.
§ 20913(a).   Application of the rule of lenity takes on
heightened importance when an offense requires no mens rea
and its potential penalty is so severe.[5]

---

[4] While § 2423(c) doesn't itself require a mens rea, "illicit sexual
conduct" can be established through offenses that do.  *See* 18 U.S.C.
§ 2423(f)(1).  However, illicit sexual conduct can also be established
through a commercial sex act, *id.* § 1591, or production of child
pornography, *id.* § 2256(8), neither of which requires a particular state
of mind.  *See id.* § 2423(f)(2)–(3).  Moreover, the requisite mens rea,
when applicable, is minimal.  Statutory rape, for example, requires proof
only that the defendant "knowingly" engaged in a sexual act with another
person.  *Id.* § 2243(a).  The government doesn't need to prove knowledge
of the victim's age, though reasonable mistake about it is a defense.  *See
id.* § 2243(c)(1), (d).

[5] A person such as Pepe who commits heinous acts over a long
period of time obviously has an intent to violate the law.  But the statute
would apply equally to a 19-year-old who has a romantic and mutually
desired sexual relationship with a 15-year-old, *see* 18 U.S.C. §§ 2243(a),
2423(f)(1), even if the relationship is legal in both the 19-year-old's

Another venerable canon of construction instructs us that "ambiguous statutory language [should] be construed to avoid serious constitutional doubts." *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 516 (2009) (citing *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988)). Congress ostensibly enacted § 2423(c) pursuant to its authority under the Foreign Commerce Clause. *See Clark*, 435 F.3d at 1104. The government argues that the Necessary and Proper Clause was another basis for the legislation because Congress needed to implement an international convention on child trafficking to which the United States was a signatory—the Optional Protocol to the Convention on the Rights of the Child on the sale of children, child prostitution and child pornography, G.A. Res. 54/263, U.N. Doc. A/54/263 (May 25, 2000). Pepe disputes that either Clause is a valid source of Congressional authority.

*Clark* acknowledged the possibility that "a longer gap between the travel and the commercial sex act could trigger constitutional or other concerns." 435 F.3d at 1119 n.11. With no statutory limitation on the temporal gap we all but guarantee a stream of litigation over the statute's constitutionality. *See* Naomi Harlin Goodno, *When the Commerce Clause Goes International: A Proposed Legal Framework for the Foreign Commerce Clause*, 65 Fla. L. Rev. 1139, 1210–11 (2013) ("[E]ach scenario [under § 2423(c)] would have to be considered on a case-by-case basis to determine if Congress is acting within its power under the Foreign Commerce Clause."). In any given case, defense counsel would be remiss not to attempt to

---

home state and the foreign country, *see, e.g.*, Colo. Rev. Stat. § 18-3-402(e); *Code pénal* art. 227-25 (Fr.). We can't invoke the rule of lenity selectively for sympathetic defendants.

distinguish their client from Michael Clark due to a longer gap between the travel and the illicit sexual conduct or some other factor that makes the connection with foreign commerce more attenuated.

Nor are Pepe's constitutional arguments trivial. "Cases involving the reach of the Foreign Commerce Clause vis-[à]-vis congressional authority to regulate our citizens' conduct abroad are few and far between." *Clark*, 435 F.3d at 1102. There is "strong textual, structural, and historical evidence that Congress has less—not more—power to impose U.S. law inside foreign nations than inside the several states under the Commerce Clause." Anthony J. Colangelo, *The Foreign Commerce Clause*, 96 Va. L. Rev. 949, 1003 (2010); *see also United States v. Al-Maliki*, 787 F.3d 784, 791 (6th Cir. 2015) ("doubt[ing]" that the Foreign Commerce Clause "include[s] the power to punish a citizen's noncommercial conduct while the citizen resides in a foreign nation"). And the government's argument under the Necessary and Proper Clause rests on a 1920 case that has been sharply criticized in recent years.[6] While the current version of § 2423(c) will

---

[6] In *Missouri v. Holland*, the Supreme Court held that "[i]f [a] treaty is valid there can be no dispute about the validity of the [implementing] statute under Article 1, Section 8, as a necessary and proper means to execute the powers of the Government." 252 U.S. 416, 432 (1920). Nearly a century later, the Court interpreted a criminal statute narrowly to avoid reconsidering this precedent. *See Bond v. United States*, 134 S. Ct. 2077, 2085–87 (2014). Three Justices would have reached the constitutional question and struck down the statute as exceeding Congress's authority. *See id.* at 2100 (Scalia, J., concurring) ("[T]he possibilities of what the Federal Government may accomplish, with the right treaty in hand, are endless and hardly farfetched."); *id.* at 2109–10 (Thomas, J., concurring) (criticizing *Holland* for taking "an improperly broad view of the Necessary and Proper Clause" in light of "the original understanding [of] the Treaty Power"); *see also United States v. Bollinger*, 798 F.3d 201, 221 (4th Cir. 2015) ("Because Congress may

inevitably force us to grapple with the outer limits of Congress's power to regulate the conduct of U.S. citizens residing abroad, we leave that question for another day.

Finally, our interpretation brings us in line with the several other circuits that read "travels" expansively. *See Schmidt*, 845 F.3d at 157 ("A person may still be traveling even after a significant amount of time in a given location so long as the visit is sufficiently transient or contemplates some future departure." (citing *Jackson*, 480 F.3d at 1022)); *United States v. McGuire*, 627 F.3d 622, 624 (7th Cir. 2010) ("Section 2423(c) was added to punish persons who travel in foreign commerce and have sex with a minor in the course of the trip regardless of what the defendant intended when he set out on it."); *United States v. Frank*, 599 F.3d 1221, 1239–40 (11th Cir. 2010) (finding no plain error in proposition that "§ 2423(c) allows multiple sentences for making a single trip during which the defendant engaged in illicit sexual conduct with multiple minors"). *But see United States v. Pendleton*, 658 F.3d 299, 309 (3d Cir. 2011) ("[U]nder § 2423(c), a person's travel through foreign commerce continues to provide a link to his illicit sexual conduct long after his travel is complete.").

## E.

The dissent responds to a straw argument by misstating Pepe's position both here and in the district court as one of only temporary residency in Cambodia. According to the

---

enact legislation regulating domestic affairs pursuant to international treaties, courts should tread carefully in expanding that power." (citing *Bond*, 134 S. Ct. at 2087–88)); Nicholas Quinn Rosenkranz, *Executing the Treaty Power*, 118 Harv. L. Rev. 1867, 1869 (2005) (arguing that *Holland* allows treaties to "increase the legislative power virtually without limit").

dissent, Pepe "did not rest his statutory argument on his alleged intent to resettle" before the district court and "[f]or the first time on appeal . . . argues that his temporary residency . . . took his conduct out of the statutory reach of § 2423(c)." Dissent at 25 & n.1. To the contrary, throughout the proceedings Pepe has maintained that "he was indeed a resident of Cambodia who had demonstrated a 'permanent intent to resettle' in that country." In moving to dismiss the indictment, Pepe represented to the district court that he had "permanently relocated to Cambodia" in 2003, more than two years before the conduct at issue. He argued that "the statute in no way indicates that it's intended . . . to target people who were already residing in a foreign country and had demonstrated . . . no intent to return."

The dissent acknowledges that prior to the 2013 amendment, § 2423(c) "likely did not apply to citizens who had permanently resettled in a foreign country." Dissent at 29. Given Pepe's claim that he was residing in Cambodia on a permanent basis, we fail to see the relevance of the dissent's contention that the statute has always applied to persons residing abroad temporarily. If the statute did not apply to U.S. citizens permanently living overseas, Pepe's conviction cannot stand.

The dissent's only response is that Pepe should have raised his statutory argument in the district court. *See* Dissent at 25 n.1, 30. In fact, he did. The district court understood Pepe to argue that "he was no longer traveling at the time he allegedly engaged in illicit sexual conduct, because he permanently resided in Cambodia." The district court rejected this argument on the ground that Pepe "did not have to be traveling at the time he engaged in illicit sexual conduct in order to be liable under § 2423(c)."

But even if Pepe didn't present his precise statutory argument to the district court, there was no reason for him to do so. Under *Clark*'s then-binding interpretation of the statutory language, it was a nonstarter. Michael Clark's argument that he had permanently resettled in Cambodia was rejected as irrelevant to the statutory definition. *See United States v. Clark*, 315 F. Supp. 2d 1127, 1134 & n.2 (W.D. Wash. 2004). We agreed with the district court that carving out an exception for permanent residents would "add elements to the crime . . . that simply do not exist in the statute." *Clark*, 435 F.3d at 1107 (quoting *Clark*, 315 F. Supp. 2d at 1130).

The dissent concedes that Pepe's statutory theory was "not viable under applicable case law" at the time. Dissent at 30. Indeed, it wasn't until five years after Pepe's conviction that Congress passed the statutory amendment giving rise to his interpretive challenge. A defendant need not raise a futile defense at trial in order to preserve it for appeal. *See United States v. Wilbur*, 674 F.3d 1160, 1177 (9th Cir. 2012) (citing *United States v. Manning*, 56 F.3d 1188, 1195 (9th Cir. 1995)).

Moreover, the government doesn't assert that Pepe forfeited his statutory claim. By responding to the merits of Pepe's contentions, the government forfeited any forfeiture argument. *See United States v. Lewis*, 787 F.2d 1318, 1323 n.6 (9th Cir. 1986)); *see also Tibble v. Edison Int'l*, 843 F.3d 1187, 1196 (9th Cir. 2016) (en banc).

We do not lightly overturn Pepe's convictions. But we cannot uphold his 210-year sentence under a statute that he may not have violated simply because his reprehensible conduct harmed vulnerable children. Due process requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re*

*Winship*, 397 U.S. 358, 364 (1970).  The government has not met this burden with respect to the travel element.

## IV.

We hold that a conviction under § 2423(c), when based on a defendant's travel in foreign commerce, requires proof that the illicit sexual conduct occurred while the defendant was traveling.  If, as Pepe maintains, he relocated to Cambodia in March 2003, then the statute does not apply to him.

The government appears to dispute Pepe's claim that he had resettled in Cambodia, citing among other things Pepe's post-arrest letters to the U.S. ambassador and various family members expressing his intent to register his Cambodian marriage and return to the United States with his wife. Because the jury was not properly instructed on the travel element, we vacate Pepe's convictions and sentence.  On remand, should the government elect to retry him, it will need to prove that he was still traveling when he committed illicit sexual conduct.

**VACATED and REMANDED.**

---

THOMAS, Chief Judge, dissenting:

*United States v. Clark*, 435 F.3d 1100 (9th Cir. 2006) remains good law and is binding on this panel.  It is not "clearly irreconcilable" with the 2013 amendment to § 2423(c).  Indeed, *Clark*'s holding of the statutory reach of the prior statute is completely consistent with the amendment.  Further, the question of whether the prior statute applied to citizens who temporarily resided abroad

and intended to resettle was never argued to the district court.  We should not be deciding that question in this appeal, much less overturning prior circuit precedent as a three judge panel.  Therefore, I must respectfully dissent.

For the first time on appeal, Pepe argues that his temporary residency, by itself, took his conduct out of the statutory reach of § 2423(c).[1]  Part of his argument is founded on the 2013 amendment to § 2423(c).  The version of the statute under which Pepe was convicted applied to "[a]ny United States citizen . . . who travels in foreign commerce, and engages in any illicit sexual conduct with another person."  18 U.S.C. § 2423(c) (2003).  The 2013 amendment added the phrase "or resides, either temporarily or permanently, in a foreign country."  It otherwise re-enacted the prior statute and left the remaining phrases untouched.

We, of course, presume as a general rule that Congressional amendments are intended "to have real and substantial effect."  *Pierce County v. Guillen*, 537 U.S. 129, 145 (2003).  However, the principles of statutory construction do not end there.  "The mere fact of an

---

[1] Before the district court, he only argued that "the principles of statutory construction require[] that the prohibited conduct in § 2423(c) occur soon after the travel."  He did not rest his statutory argument on his alleged intent to resettle–a contention that was vigorously disputed by the United States given his written statements to the Cambodian government that he intended to live his life in the United States, a letter to his family that he intended to return to the United States to live, and a letter to his storage facility in Colorado that gave his permanent address as Oxnard, California and stating that he would be traveling in and out of the country.  He claimed to have permanently resettled solely in the context of his constitutional challenges to Congressional authority.  The district court never resolved the factual question of whether or not Pepe had permanently resettled in Cambodia.

amendment itself does not indicate that the legislature intended to change a law." *Callajas v. McMahon*, 750 F.2d 729, 731 (9th Cir. 1984). Indeed, we also presume that Congress "had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 802–03 (1985) (quoting *Lorillard v. Pons*, 434 U.S. 575, 580–81 (1978)). Further, "when 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.' " *Merrill Lynch v. Dabit*, 547 U.S. 71, 85–86 (2006) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998)).

Thus, we presume that, in enacting the 2013 amendments, Congress was well aware of the prior judicial interpretations of the prior statute. Although the underlying analysis in cases interpreting § 2423(c) may have differed, the holding was entirely the same: § 2423(c) applied to conduct that occurred after the U.S. citizen arrived in a foreign country. *Clark* rejected the defendant's contention that the crime must be committed "while the perpetrator is literally en route." 435 F.3d at 1108. Rather, *Clark* held that a two month gap between the end of transit and the crime did not take Clark's actions out of the statutory reach, reasoning that the twofold requirement of foreign travel and illicit sexual conduct "does not require that the conduct occur *while* traveling in foreign commerce." *Id.* at 1107. *Clark* noted that the legislative history of the prior legislation strongly suggested that Congress intended for the original statute to encompass conduct after the completion of travel, during residencies and other long-term stays in foreign countries. *Clark*, 435 F.3d at 1104, 1108; H.R. Rep. No. 108–66, at 51 (2003) ("Under [§ 2423(c)]{fs28 , the

government would only have to prove that the defendant engaged in illicit sexual conduct with a minor while in a foreign country.

The Fourth Circuit reached the same conclusion that arrival in a country did not terminate the statutory reach of § 2423(c) by expansively interpreting the term "traveling" broadly as "encompass[ing] movement abroad that maintains some nexus with the United States." *United States v. Schmidt*, 845 F.3d 153, 157 (4th Cir. 2017). *Schmidt* noted that "[a] person may still be traveling even after a significant amount of time in a given location so long as the visit is sufficiently transient or contemplates some future departure." *Id.* The bottom line of both cases is precisely the same: the reach of § 2423 did not stop when the U.S. Citizen arrived on foreign soil.[2]

Indeed, federal courts have uniformly and repeatedly applied the original statute to capture precisely this type of conduct. *See, e.g.*, *Schmidt*, 845 F.3d at 155 (applying the statute to a citizen who fled to the Philippines and then Cambodia a year later); *Clark*, 435 F.3d at 1103 (convicted defendant repeatedly molested young boys while residing in Cambodia from 1998 until extraction in 2003, with annual trips back to the United States); *United States v. Pendleton*, 658 F.3d 299, 301 (3d Cir. 2011) (convicted defendant molested a minor six months after arrival in Germany);

---

[2] I am not necessarily persuaded that there is a meaningful conflict between *Clark* and *Schmidt*. The *Clark* panel was only confronted with the argument that foreign travel--and thus the reach of the statute-- terminated on arrival in the foreign country. It did not specifically construe the term "foreign travel" in determining that the statute applied after a citizen's arrival in a foreign country. But that question is, in my mind, irrelevant because the holding is the same in both cases, even if there is some difference in rationale.

*United States v. Flath*, No. 11-CR-69, 2011 WL 6299941, at *1, *12 (E.D. Wis. Sept. 14, 2011), *report and recommendation adopted in relevant part*, 845 F. Supp. 2d 951 (E.D. Wis. 2012) (defendant was indicted in 2010 despite maintaining living in Belize for four years).

Significantly, both *Clark* and *Schmidt* stand for the proposition that living abroad alone did not place the defendants out of the reach of § 2423(c). The defendant in *Clark* had "primarily resided in Cambodia from 1998 until his extradition in 2004." 435 F.3d at 1103. The defendant in *Schmidt* had lived abroad for almost two years. 845 F.3d at 157.

In sum, when Congress passed the 2013 amendments, it was aware of the uniform judicial decisions interpreting § 2423(c) that held that the statute applied to conduct occurring after the defendant arrived in a foreign country even if the defendant had been living abroad and had remained in the foreign country for "a significant amount of time." *Schmidt*, 845 F.3d at 157. Congress did not alter that language, evincing its intent to incorporate those judicial interpretations. *Merrill Lynch*, 547 U.S. at 85–86. Thus, there is nothing in the amended statute that would indicate an intent to overrule *Clark*, or assign some other meaning to the prior statutory language.

There were other judicial observations on the prior statute that were doubtless important to Congress. No case prescribed a temporal limit as to the statute's reach on the citizen's presence in a foreign country. However in *United States v. Jackson*, 480 F.3d 1014 (9th Cir. 2007) we construed *Clark* as implying that "travel can end for a United States citizen at *some* point while still abroad," and we suggested that the statute did not reach citizens who had permanently resettled in a foreign country because their

foreign travel had ended.  *Id.* at 1023.  *Schmidt* also recognized the possibility that a citizen's permanent resettlement in a foreign country might place the citizen's conduct beyond the reach of the statute.  845 F.3d at 158. However, *Schmidt* held that "[w]hile intent to permanently resettle may be one factor in determining when relevant travel in foreign commerce comes to an end, it is not dispositive."  *Id.*  Thus, at the time Congress passed the amendments, applicable case law interpreting the prior statute suggested that § 2423(c) did not apply to U.S. citizens who had permanently resettled in another country.  Thus, it was quite logical for Congress to add amendatory language to address that situation and make it clear that the statute applied to all U.S. citizens not only who "travel[ed] in foreign commerce," but to those who "reside[], either temporarily or permanently, in a foreign country."  The new language settled the question of whether the statute applied to U.S. citizens who had permanently resettled in another country.  It did not, however, purport to alter the meaning of the prior statutory language, which remained intact.

In short, when Congress passed the 2013 amendments, we presume it was aware of judicial interpretations of the existing statute, holding that: (1) the statute applied to conduct after the citizen arrived in the foreign country, even if the citizen had been abroad for a significant time and had taken up temporary residency, and (2) the statute likely did not apply to citizens who had permanently resettled in a foreign country.  Because Congress reenacted the same language that courts had construed, we presume that Congress intended to incorporate those judicial interpretations, rather than supplant them.  *Merrill Lynch*, 547 U.S. at 85–86.  By adding permanent residency to the statute, it was expanding the statutory reach, not contracting. Thus, the amendments had "real and substantial effect," but

did not alter existing law as to construction of the prior statute. To the extent that the new language clarified that the statute applied to temporary residency, it was merely a clarifying amendment, not a substantive change in the existing law. *ABKO Music Inv. v. Lavere*, 217 F.3d 684, 691 (9th Cir. 2000). It is implausible to believe that Congress intended through the 2013 amendments to narrow the application of the prior statute.

Thus, there is nothing in the 2013 amendments that is "clearly irreconcilable" with *Clark*, and certainly nothing that would justify a three judge panel overruling it.

Under *Clark*, *Schmidt*, and every other federal case construing the prior version of § 2423(c), the statute applied to Pepe. His objection, made for the first time on appeal, to the statute's application is that he had been living in Cambodia for some time, which is not sufficient to avoid the statute under *Clark*, *Schmidt*, or *Pendleton*. As noted earlier, he did not argue to the district court that the statute did not apply to him because he had intended to permanently resettle; he only made an argument as to the temporal reach of the statute, and that theory was clearly precluded by case law. He did not request a jury instruction stating that the statute did not apply to citizens who had taken up residency abroad or that had permanently resettled; he only requested one that said that the illegal conduct must occur immediately or soon after travel in foreign commerce. There was no error, much less plain error, in the district court's denial of the motion to dismiss the indictment on an unasserted theory of statutory construction, nor in the district court not *sua sponte* instructing the jury on a theory not asserted at trial and not viable under applicable case law.

In sum, under *Clark*, the prior version of § 2423(c) applies to Pepe, as the majority concedes. There is nothing

in the 2013 amendments that is "clearly irreconcilable" with *Clark*. Thus, it remains good law, binding on this panel, and requires affirmance.

For these reasons, I respectfully dissent.[3]

---

[3] I see no merit in Pepe's other assertions on appeal, but there is no reason to discuss them given that the majority opinion is confined to a single issue on which it bases the reversal.