NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUN 9 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50327 |
| Plaintiff-Appellee, | D.C. No. 2:09-cr-00933-CAS-1 |
| v. | |
| RONALD GERARD BOYAJIAN, AKA Ronald G. Boyajian, AKA Ronald Geral Boyajian, AKA Ronald Gerald Boyajian, AKA John, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted May 10, 2023
Pasadena, California

Before: HURWITZ and R. NELSON, Circuit Judges.[**]

Ronald Boyajian was convicted of traveling with intent to engage in illicit

sexual conduct with a minor in violation of 18 U.S.C. § 2423(b) (Count One),

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] This case was decided by quorum of the panel. *See* 28 U.S.C. § 46(d);
Ninth Circuit General Order 3.2(h).

engaging in illicit sexual conduct with a minor in foreign places in violation of 18 U.S.C. § 2423(c) (Count Two), and commission of these offenses while required to register as a sex offender in violation of 18 U.S.C. § 2260A (Count Three).  We have jurisdiction over this appeal under 18 U.S.C. § 3742 and 28 U.S.C. § 1291 and affirm.

1. The jury instruction on Count Two was erroneous because it would allow conviction even if Boyajian had stopped traveling at the time of the offense.  *See United States v. Pepe*, 895 F.3d 679, 691 (9th Cir. 2018).  But the error was harmless.  *See United States v. Conti*, 804 F.3d 977, 980–81 (9th Cir. 2015).  The evidence that Boyajian was traveling in Cambodia when he committed the offense was overwhelming.  In the nine years before the offense, he had traveled to Asia thirty-five times, each time returning to California.  He traveled on a United States passport, had a California driver's license, described his travels to custom officials as for "vacation" or "business," told those officials that he lived in California, and stayed in various guesthouses in Cambodia.  He described Cambodia as a "dirty" "third-world country" and had booked a return flight to the United States for the day after he was arrested in Cambodia.  *See United States v. Johnson*, 823 F. App'x 485, 488–89 (9th Cir. 2020) (upholding a § 2423(c) conviction and noting that "during the nine-year period in which Johnson avers he resided in Cambodia, he maintained a permanent residence in Oregon, held an Oregon driver's license, and took other

2

actions consistent with that of a citizen of the United States traveling temporarily overseas. On U.S. passport forms, for example, Johnson would describe his 'trips abroad' as 'temporary.'").

2. We rejected the claim that § 2423(c) regulates activity outside of Congress's foreign commerce powers in *United States v. Pepe*, 895 F.3d 679, 689–90 (9th Cir. 2018).

3. Contrary to Boyajian's argument, § 2423(b), which prohibits "travel[ ] in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person," does not require that the illicit conduct be a but-for purpose of the travel. *See United States v. Flucas*, 22 F.4th 1149, 1156–57, 1164 (9th Cir. 2022).

4. Boyajian's argument that his convictions violate the doctrines of dual criminality and specialty also fails. These doctrines apply to transfers occurring through extradition treaties. *See Ker v. Illinois*, 119 U.S. 436, 443 (1886). The United States and Cambodia have no such treaty, and the Cambodian Supreme Court expressly determined that Boyajian's transfer to this country was not an extradition.

5. In sentencing, the district court invoked U.S.S.G. § 2G1.3(d)(1), which provides that "[i]f the offense involved more than one minor," grouping rules "shall be applied as if . . . each victim had been contained in a separate count of conviction." Boyajian argues that his abuse against children other than the named victim was not within "the offense" of conviction because "it fell well outside the

3

temporal scope of the conduct charged in the indictment." *See United States v. Schock*, 862 F.3d 563, 567 (6th Cir. 2017).

However, any error in applying the Guideline enhancement was harmless. The district court imposed the statutory maximum sentences on Counts One and Two and explained why those sentences were necessary. *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 n.5 (9th Cir. 2011) (per curiam).

6. The district court did not err in denying Boyajian's motion to suppress evidence seized in his room at a Cambodian guesthouse during a joint raid by United States and Cambodian officials. The Cambodian Supreme Court found the search illegal under Cambodian law, and "compliance with foreign law alone determines whether the search violated the Fourth Amendment." *United States v. Barona*, 56 F.3d 1087, 1092 n.1 (9th Cir. 1995). But United States law "governs whether illegally obtained evidence should be excluded, and the essence of our inquiry is whether exclusion serves the rationale of deterring federal officers from unlawful conduct." *United States v. Peterson*, 812 F.2d 486, 491 (9th Cir. 1987).

The Fourth Amendment exclusionary rule does not apply when "law enforcement officers have acted in objective good faith." *United States v. Leon*, 468 U.S. 897, 908 (1984). The search of Boyajian's room was found illegal under Cambodian law because it was conducted without the guesthouse owner's written consent—a rule with no counterpart in our jurisprudence. Moreover, the United

4

States officials conducting the search reasonably relied on representations by their foreign counterparts that the prosecutor's verbal submission sufficed, and the government presented testimony from multiple Cambodian officials and legal experts who believed that this advice was accurate when given. *See Peterson*, 812 F.2d at 492.

7. We review a district court's finding that a defendant has knowingly and voluntarily waived his Sixth Amendment right to counsel de novo and a finding that the waiver was unequivocal for clear error. *See United States v. Mendez-Sanchez*, 563 F.3d 935, 944 (9th Cir. 2009). We find no error.

Boyajian did not condition his request to proceed pro se below on an alleged decision by the district court denying him new counsel. Rather, Boyajian stated that "I am simply asking to go pro se and nothing else," and that "the only thing I want is pro se. I don't want anything else. . . . Hundred percent." He thereafter complained that standby counsel was overstepping his role; filed a "Standing Objection to the Court Advancing Standby Counsel George Buehler to Trial Counsel"; and stated during sentencing that "I do not want under *Faretta* [standby counsel] to speak at all in this courtroom, at all, and I'd like to make that record very clear." He repeatedly confirmed that he did not want his pro se status revoked.

8. Boyajian also argues that he was denied the right to counsel during a hearing concerning a fee dispute between Boyajian and former counsel. The district

5

court, however, merely required that the lawyers who sought to argue about "ethics issues" become counsel of record. Their refusal to do so did not violate Boyajian's constitutional rights.

9. "[A] federal court properly may exercise ancillary jurisdiction over attorney fee disputes collateral to the underlying litigation." *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 968 (9th Cir. 2014) (cleaned up). However, the exercise of that jurisdiction is discretionary. *See id.* at 971. The district court did not abuse its discretion in declining to exercise ancillary jurisdiction over the fee dispute. The court noted that adjudicating that dispute would cause further delay in the already extended criminal proceedings, Boyajian provided "no reason why he cannot resolve his fee dispute in state court as a state law claim for breach of contract," and he failed to show how resolving this dispute would "facilitate the resolution of his criminal trial."

**AFFIRMED.**